Hill *v.* Reed.

---

# HILL vs. REED.

Propositions for insurance, made to a mutual insurance company, under the 4th section of the act of April 10, 1849, "for the incorporation of insurance companies," need not contain a specific description of the property to be insured, such as will enable the company, when it commences business, to make out policies in accordance with such propositions.

It is only necessary for them to state the objects on which insurance is sought, without specifying the particulars.

A note given to a mutual insurance company, for premiums in advance, payable "in such portions, and at such time or times, as the directors of the company may, agreeably to their charter and by-laws require," is in effect payable on demand; and is a substantial compliance with the 5th section of the general act for the incorporation of insurance companies, which requires notes of that nature to be payable "at the end of, or within, twelve months" from the date.

After a person has made a proposition to a mutual insurance company for insurance, assuming that it had legal capacity to entertain such a proposition and comply with its demand, and an agreement has been entered into between him and the company, in accordance with his proposition; and he has received the benefit from the agreement for which he stipulated, it does not lie with him, when called upon to perform the agreement on his part, to say that his proposition was not such as the statute contemplated; or that the company had not legal authority to contract with him.

The 4th section of the 4th title of the chapter of the revised statutes relating to corporations (1 R. S. 603) which prohibits the making of assignments by corporations in contemplation of insolvency, has no application to an insurance company organized under the act of 1849.

Hill *v.* Reed.

Such a company is a " moneyed corporation;" and being such, it is subject to the provisions of the second title of the chapter of the revised statutes relating to corporations, and is therefore expressly exempted from the operation of the 4th title of that chapter.

The only restriction upon the power of an insurance company to make a valid assignment is that contained in the 9th section of the second title. (1 R. S. 591.) A general assignment for the benefit of creditors, without preference, though made in insolvency, or in contemplation of insolvency, is not prohibited.

The defendant gave a premium note to an insurance company, by which he agreed to pay to the company, or its treasurer, $10,000 " in such portions and at such time or times as the directors may, agreeably to their charter and by-laws, require." The note was received as a part of the capital stock of the company. The directors subsequently adopted a resolution, under which all the assets of the company, including the note in question, were transferred to the plaintiff, in trust that he should collect them and apply the proceeds to the payment of the debts of the company. *Held* that this resolution was to be regarded as a requirement that the note should be paid, and as a substantial compliance with the condition upon which it was made payable.

DEMURRER. The complaint stated that the defendant and other persons, in all to the number of thirteen, in December, 1849, associated together to form an incorporated company by the name of " The Merchants' Mutual Insurance Company of Buffalo," in pursuance of the provisions of the act entitled " an act for the incorporation of insurance companies," passed April 10, 1849. That the business of the company was to be marine, fire and inland navigation insurance, and was to be conducted on the plan of mutual insurance ; that the associates did, in all things, duly pursue and perform all the conditions and requirements of the act, and formed and organized a company for the purposes aforesaid, by the name aforesaid, and located in the city of Buffalo, in the county of Erie.

It was further stated that the associates filed a declaration, in the office of the secretary of state, signed by all the corporators, expressing their intention to form a company for the purpose aforesaid; that such declaration comprised a copy of the charter proposed to be adopted by them ; and that they duly published a notice of their intention, as required.

It was further stated that, by the terms of the charter filed

by the associates, the capital of the company was to consist of premium notes to the amount of $100,000, given on *agreements for insurance* and payable as required in the 5th section of the act; that such notes were at all times to be kept good and unimpaired, and should entitle the makers thereof to participate in the profits of the company, and that *the makers of the notes should be deemed members of the company;* that it was also provided by the charter that each member should be charged with a proportionate share of the losses, damages and expenses of the company, according to the original amount of premium paid in cash insurance by such member, or for which he should have given his premium note as part of the capital stock; and that each member should be credited with his proportionate share of the premiums earned, and the profits of investments; and further, that a compensation, at a rate not exceeding seven per cent. per annum, to be determined by the board of directors, from time to time, should annually be allowed and paid on the premium notes, and that such compensation should be deemed expenses.

It was further stated that in February, 1850, and before the company commenced business, *agreements for insurance* were entered into, the premiums on which amounted to $100,000, and that premium notes to that amount were received by the company; that such agreements were entered into by the acceptance of propositions made by the defendant and other persons in the following form: "Application of Charles M. Reed for insurance against fire by the Merchants'. Mutual Insurance Company of Buffalo, for the sum of $5000 premium, for himself or for whom it may concern, on buildings, goods, &c. *at such rates and upon such conditions* and for such time or times as shall be. mutually agreed upon and specified in policy or policies issued by said company upon this application. Also application of said Reed for marine and inland insurance for the sum of $5000 premium for himself and whom it may concern, on vessels, in such sums, at such rates, and upon such conditions as shall be mutually agreed upon and indorsed upon policy or referred to in policy or policies; said vessels to navigate the

Hill *v.* Reed.

waters of Lake Ontario, &c," signed " Charles M. Reed ;" that said proposition was duly accepted, and the defendant thereupon made and delivered, as and for a part of the capital stock of the company required by the 5th section of the act, his certain note in writing, as follows : " $10,000. For value received in certificate No. 2, dated February 7, 1850, issued by the Merchants' Mutual Insurance Company of Buffalo, based upon my application for insurance in said company, I promise to pay to said company, or their treasurer, for the time being, the sum of ten thousand dollars, in such portions, and at such time or times, as the directors of said company may, agreeably to their charter and by-laws, require." Signed, " Charles M. Reed."

It was further stated that the attorney general had given the certificate required by the act, and that the comptroller had thereupon caused an examination to be made by three disinterested persons, specially appointed by him for that purpose, who certified, under oath, that upon such examination they found that the company had received and was in the actual possession of *premium notes*, based on applications for insurance, to the full extent required by the 5th section of the act. And that they had examined in regard to the responsibility of the persons executing said premium notes, and that the same were, in their opinion, good and collectible ; that copies of the certificate were filed in the office of the secretary of state, who thereupon furnished the company with a certified copy of the charter and certificates aforesaid, and that these were filed by the company in the office of the clerk of the county of Erie, on the first day of March, 1850 ; and that thereupon the company, with the knowledge and assent of the defendant, commenced business, and continued the same until the 9th of January, 1852 ; that the company had no other capital or stock except the said notes, and the defendant, with full knowledge of the facts, took part in the business of the company and participated in its profits ; that he was credited on the books of the company, with his assent, and received from the company certain amounts of money as compensation for his note, according to the provisions of the charter.

It was further stated that the company, having become insolvent, in consequence of losses sustained in the course of its business, on the 10th of January, 1852, in pursuance of a resolution of its board of directors, the defendant himself then being an acting director, executed an assignment of all its property and effects to the plaintiff, in trust for the benefit of its creditors; that the note of the defendant constituted a part of the effects so assigned; that before this suit was commenced the plaintiff demanded payment of the note, and that such payment was refused by the defendant.

The defendant demurred to the complaint, on the ground that the facts stated were not sufficient to constitute a cause of action; and specified the following causes of demurrer: "1. The complaint does not allege a performance on the part of the company of the conditions, upon the performance of which it was authorized to commence business. 2. It appears from the complaint that such conditions never were performed; and that the company never acquired a corporate existence. 3. It appears from the complaint that no agreement for insurance, such as is required by the act, was ever entered into between the company and the defendant, or any other person; and that the note upon which the plaintiff seeks to recover was not received in advance, or otherwise, for any risk contemplated by the act. 4. That the company had no power to receive the note as a part of its capital stock or otherwise. 5. That the note is void for want of consideration. 6. That it does not appear that the directors ever required the defendant to pay the note or any part of it. 7. That the assignment to the plaintiff is void."

*G. W. Clinton* and *J. Hubbell*, for the plaintiff.

*B. F. Greene* and *G. B. Hibbard*, for the defendant.

HARRIS, J. In framing a general law for the organization of insurance companies, it was an object of the first importance to provide security for the payment of liabilities. To effect this object, the 5th section of the act requires a capital to be raised

Hill v. Reed.

before the company is authorized to commence business. This capital, in the case of mutual insurance companies, is to consist of notes made by applicants for insurance. The company, having complied with the requirements of the 3d section of the act, is authorized to receive propositions and enter into agreements for insurance. A necessary element in such agreements is, that the applicant shall give his note in advance for the premiums he proposes to pay the company. When the notes thus given shall amount to the sum prescribed in the 5th section, the company, upon complying also with the requirements of the 11th section of the act, may proceed with the business for which it was organized, and not before. The notes thus to be obtained constitute the capital of the company, and furnish the security upon which dealers with the company must chiefly, if not altogether, rely. Such notes are declared to be valid, and to be negotiable and collectible for the purpose of paying losses or otherwise.

It has been supposed that the propositions for insurance which the company, by the 4th section of the act, is authorized to receive, must, to make the transaction valid, contain a specific description of the property to be insured, so that the company, when it should have complied with the other requirements of the act and be ready to commence business, might make out its policies in accordance with the proposition. But I do not understand that any such thing was contemplated by the legislature. The object of the legislature, as we have seen, was to provide a sufficient capital for the security of creditors. To do this, in the case of mutual insurance companies, a specified amount of notes was requisite. The consideration of these notes was to be future insurance. Whether that insurance should ever be effected or not, was a matter with which the legislature had no concern. Its end was gained, if the notes were made. These were to be given, not upon contracts of insurance, but upon agreements on the part of the company that it would, upon request, after it should be fully organized, enter into contracts of insurance with the makers. When such contracts should be made, the premiums paid thereon would *probably* reduce the

amount of the notes *pro tanto*. Until such premiums should be paid, the makers of the notes would, on the one hand, be liable for the whole amount, and, on the other, would be entitled to the compensation authorized by the act; and, in this case, provided for in the charter of the company, for the use of their credit. The language of Oakley, Ch. J. in a case arising under another act, is equally applicable to this case. "The application for insurance," he says, "is a very different thing from the contract of insurance to which it leads. It is a mere proposition, and only needs to state the objects on which insurance is sought, without specifying the particulars. With the applications the parties gave their notes for a corresponding amount of premiums. They then had a right to demand regular policies of insurance for risks within their applications, and the company was bound to issue them." (*Caryl* v. *McElrath*, 3 *Sand. S. C. R.* 176.)

Again; it is objected that the note of the defendant is not such a note as by the 5th section of the act the company was authorized to receive as a part of its capital. The notes so to be received are required to be payable "at the end of, or within, twelve months from the date thereof." This note is payable "in such portions, and at such time or times, as the directors of the company may agreeably to their charter and by-laws require." In other words, it is payable on demand. The object of the legislature, obviously, was, to have the capital of the company available for the payment of debts, when required. It cannot be pretended that a note which, in legal effect, is payable on demand, is not as available for the purposes of the company, as if payable at a specific time within a year from its date. Indeed, I think a note payable on demand may well be said to be payable "within twelve months from the date thereof." It is enough that there has been a substantial compliance with the requirement of the statute in this respect. I am of opinion, therefore, that the proposition of the defendant for insurance and the acceptance of that proposition by the company, and the execution of the note by the defendant, were in conformity with the statute, and that enough appears upon the face of the complaint

to show that the company had become a body corporate and was authorized to enter upon its appropriate business.

But had there been any failure of the company to conform to the requirements of the statute, I do not think the defendant would have the right to avail himself of the objection. He made ·a proposition for insurance to the company, assuming that it had legal capacity to entertain such a proposition, and enter into an agreement with him in accordance with his proposition. Such an agreement was entered into between him and the company. He has received the benefit from the agreement for which he stipulated. He has been credited and paid for the use of his credit as a part of the capital of the company. It does not lie with him now, when called upon to perform the agreement on his part, to say that his proposition was not such as the statute contemplated, or that the company had not legal authority to contract with him. (*Brouwer* v. *Appleby*, 1 *Sand. S. C. R.* 168. *Palmer* v. *Lawrence*, 3 *Id.* 170. *Dutchess Cotton Manufactory* v. *Davis*, 14 *John.* 238.)

Nor can the objection that the assignment under which the plaintiff claims title to the note in question is illegal and void, be sustained. It was held, in *Haxton* v. *Bishop*, (3 *Wend.* 13,) that an assignment by a moneyed corporation to a trustee, for the benefit of creditors generally, was not within the prohibition contained in the 6th section of the act to prevent fraudulent bankruptcies. That section is incorporated into the revised statutes, and is the 4th section of the title containing special provisions relating to corporations. (1 *R. S.* 603.) But, without reference to the character of the assignment, this 4th section of the 4th title of the chapter of the revised statutes relating to corporations, has no application whatever to an insurance company organized under the act of 1849. Such a company is a moneyed corporation. (1 *R. S.* 598, § 51.) Being a moneyed corporation, it is subject to the provisions of the second title of the chapter of the revised statutes relating to corporations ; and it is declared by the 11th section of the 4th title, that the provisions of. that title shall not apply to any moneyed corporation which shall be created after the first of January, 1828, and which should be

subject to the provisions of the second title. (1 *R. S.* 605.) The only statutory restriction upon the power of such a corporation to make a valid assignment is that contained in the 9th section of the second title. 1 R. S. 591.(*a*) A general assignment for the benefit of creditors, without preference, though made in insolvency, or in contemplation of insolvency, is not prohibited.

The only other question which I deem it worth while to notice relates to the condition upon which the note is made payable. The defendant agreed to pay the company, or its treasurer, ten thousand dollars, "in such portions and at such time or times as the directors may, agreeably to their charter and by-laws, require." The note was received as a part of the capital stock of the company. The statute declares that such notes shall be valid and negotiable and collectible, for the purpose of paying losses, or otherwise. Thus the note is made transferrible, and may be collected for the purpose of paying the liabilities of the company. It is payable at such time as the directors may require. Those directors adopted a resolution under which all the assets of the company, including this note, were transferred to the plaintiff, in trust that he should collect them and apply the proceeds to the payment of the debts of the company. Such a resolution must, I think, be regarded as a requirement that the note should be paid. It is a substantial compliance with the condition upon which the note was made payable. The note could only be collected for the purpose of paying debts. It was made negotiable for that purpose. It was payable when the directors should declare that payment was needed for the purpose of discharging the liabilities of the company. By the res-

(*a*) That section is as follows: "No such conveyance, assignment, or transfer, nor any payment made, judgment suffered, lien created, or security given, by any such corporation when insolvent, or in contemplation of insolvency, *with the intent of giving a preference* to any particular creditor, over other creditors of the company, shall be valid in law; and every person receiving, by means of any such conveyance, assignment, &c. any of the effects of the corporation, shall be bound to account therefor to its creditors or stockholders, or their trustees, as the case shall require."

olution adopted by the directors they did declare that this note, as well as all the other assets of the company, must be converted into money, for the purpose of paying the liabilities of the company. In pursuance of the authority vested in the plaintiff by the assignment, payment of the note was demanded. Under these circumstances, I do not think the objection that payment of the note has not been required by the directors can be sustained. The plaintiff therefore is entitled to judgment upon the demurrer, but with liberty to the defendant to answer the complaint within twenty days after notice of this decision, upon payment of the costs of this issue of law and subsequent proceedings, to be taxed by one of the justices of this court, or the county judge, or clerk, of Erie.

[ERIE SPECIAL TERM, June 13, 1853.   *Harris*, Justice.]