Butterworth, Receiver, &c. agt. Fox.

---

## SUPERIOR COURT.

JOHN F. BUTTERWORTH, Receiver, &c., of the Island City Bank agt. EDWARD FOX.

The novel question was presented in this case, whether a defendant sued by a receiver of a bank upon his promissory note payable to the bank, could set up as a defence or counter claim, that the note became due before the receiver was appointed, and that the bank, at that time, held, as collateral security for the payment of the note, forty shares of the capital stock of the bank, owned

by the defendant, which at par was worth more than the amount of the note, and still retained such stock; and that said bank afterwards, by fraud and peculation of its authorized agents, misapplied the assets of the bank, and by its own acts so depreciated and damaged such security, and appropriated its value to their own use, that the security became of no value to the defendant or any third person ?

*Held*, that the character of the defendant as a stockholder, and his relations to the company as such, were not extinguished by his becoming a debtor; the stock, until sold by the bank under the 6th section of the statute, (1 *R. S.* 591,) continued his own.

The identification of the individual stockholders in the artificial body corporate, is logically inconsistent with the idea of a suit by one of them against the body ; as much so as an action by one partner against the firm for the peculation or frauds, or gross neglect of his copartners. The wrong is redressed upon a dissolution, and in stating the accounts among themselves.

But where the allegation is, that it was through the agents of the company, that the frauds were committed, then there is something tangible and practical. A stockholder who has been injured by the fraud, culpable neglect of duty, or a violation of provisions of law, has an ample remedy against the director or agent whose acts or omissions have produced his loss.

*Held*, that there were considerations of a general nature connected with the question, in this case, very similar to those which lie at the foundation of the rules forbidding a dealer with a corporation from impeaching its corporate existence, or the validity of its transactions with him. They should teach the courts the utmost caution in dealing with a claim, the novelty of which induces a distrust of its legality. Demurrer to answer allowed.

*Special Term, March,* 1858.

DEMURRER to one defence set up in an answer.

C. A. PEABODY, *for plaintiff.*

A. MATHEWS, *for defendant,* who insisted,

*First.* The note in suit was due before the appointment of the receiver, and the relative rights and obligations of the defendant and the bank were fixed, and could not be changed by such appointment.

I. The receiver has no other powers as respects this cause of action than a common law assignee. (*4th ed.,* 2 *Rev. Stat. p.* 469, § 68 ; *Laws of* 1849, *chap.* 226, § 11 ; 6 *Paige R.* 499.)

*Second.* The bank being the creditor, and having wilfully destroyed the collateral security hypothecated with the note

in suit, the defendant is equitably entitled to have the note cancelled. (*Thayer* agt. *Ward*, 4 *Johns. Ch. Rep.* 130; 1 *Story Eq. Jurisp.* § 326, *p.* 351; *Ex parte Mure*, 2 *Cox*, 63; *Williams* agt. *Price*, 1 *Sim. & Stu. R.* 581.)

I. After the transfer to the bank, of the stock, the defendant became a mere debtor, and no longer a stockholder as between him and the bank.

*Third.* Any loss sustained by the defendant through the destruction of his securities, is a proper claim against the bank, and its receiver as its representative, by way of counter claim against the cause of action sued upon, and is a claim arising on contract. (*Seaman* agt. *Keene*, 15 *Barb. S. C. R.* 454; *Reed* agt. *Bank of Newburgh*, 1 *Paige R.* 215; *Gay* agt. *Gay*, 10 *Paige R.* 369; *Barber* agt. *Spence,* 11 *Paige R.* 517.)

HOFFMAN, Justice. The complaint set forth that the defendant made his promissory note dated the 29th day of July, 1857, whereby he promised to .pay, thirty days after date, to the Island City Bank, for value received, the sum of $800, and delivered the same to the said bank.

It states the appointment of the plaintiff as receiver of such bank, by an order of the supreme court made pursuant to the act "to enforce the responsibility of stockholders in certain banking corporations and associations, and to provide for prompt payment of demands against such corporations and associations," passed April 5th, 1849; that the note in question is part of the property of such bank, which passed to him by virtue of such order; that he is now the lawful holder and owner thereof, and that the same is unpaid.

The portion of the answer demurred to, is as follows:

" As a second defence he says, that when said note was made and delivered to the said Island City Bank, said bank held as collateral security therefor, received from this defendant, forty shares of the capital stock of said bank of the par value of $1,000, and more than sufficient to have paid and satisfied said note in full, and still retains the same; and that said bank afterwards, by fraud and peculation of its authorized agent,

misapplied the assets of the bank, and by its own acts so depreciated and damaged such security, and appropriated its value to their own use, that the said security became of no value to the defendant or any third person, and of great damage to the defendant, insomuch that the plaintiff under a proceeding in the supreme court, is seeking to charge the defendant as a stockholder of the said bank, under the provisions of the statute referred to in the complaint, to the whole amount of the par value of said stock.

To this part of the answer the plaintiff demurs.

*First.* For that the matters stated therein do not constitute a counter claim or defence.

*Second.* That the matters of said defence therein alleged, do not arise out of the contract or transaction set forth in the complaint, as the foundation of the plaintiff's claim, and are not connected with the subject of the action; nor do they arise on contract.

*Third.* The facts stated do not constitute a cause of action against the plaintiff or the bank, or any one whom the plaintiff represents.

Now, the theory of this defence presents at the first blush, this striking feature. The stock which the defendant has deposited, has been diminished in value by the act of the company. What is the company? The aggregate of the corporators and stockholders; and he is one of them. The ideal of the corporation is as much represented by him, as by any other, or number of others. " All the individuals composing a corporation, and their successors, are considered in law as but one moral person, capable, under an artificial form of taking and conveying property, contracting debts, and performing duties, and of enjoying a variety of civil and political rights." (*Kent, Vol.* II, *p.* 267.) This identification of the individuals in the artificial body, is logically inconsistent with the idea of a suit by one of them against the body.

To leave this, perhaps an abstraction, no instance, I presume, has ever occurred of a suit of this peculiar character, any more than an action by one partner against the firm for the

peculation, frauds, or gross neglect of his copartners. The wrong is redressed upon a dissolution, and in stating the accounts among themselves.

The moment we leave this view of the case, and look at the defence, coupled with the allegation that it was through the agents, that the frauds were committed, we reach something tangible and practical. A stockholder who has been injured by the fraud, culpable neglect of duty, or a violation of provisions of law, has an ample remedy against the director or agent whose acts or omissions have produced his loss. This is given him, not only under long settled rules of law, especially in a court of equity, but also in a great variety of cases by the 18th section of the general act as to moneyed corporations. (1 *R. S.* 591.)

It is, I think, impossible to consider that the character of the defendant as a stockholder, and his relations to the company as such, were extinguished by his becoming a debtor ; the stock, until sold by the bank, under the 6th section of the statute before referred to, (1 *R. S.* 591,) continued his own.

The authorities, therefore, which the learned counsel has cited as to the duty of a creditor to preserve, and even to make available all securities placed in his power by the debtor, appear to me inapplicable. ( *Williams* agt. *Price*, 1 *Sim. & Stu. R.* 581 ; *Hayer* agt. *Ward*, 4 *John. Ch. Rep.* 123 ; *Ex parte Mure*, 2 *Cox Cas.* 43.) The company could not be under such obligations to him in relation to its own stock, for the reasons before stated. The responsibility of an agent remains unaffected.

The important case of *The National Exchange Company* agt. *Duer*, (32 *Eng. L. and Eq. Rep.* 1,) might seem at first to countenance such an action. But it is clearly distinguishable. The defendant was sued by the plaintiffs, for money lent to him to enable him to purchase shares of their stock. He resisted the action on the ground that the company, through its managers and directors, had represented the company as flourishing when it was insolvent, had paid large dividends, but had paid them out of capital ; and by false repre-

sentations that the shares were of great value, had induced the plaintiff to purchase them, offering to advance the money to enable him to do so; and to hold the shares until a profit could be realized by a sale.

The representations of the managers were made the same as those of the company, by facts connected with the adoption, and issuing reports falsely stating the situation of the company. The directors had the whole management of the affairs; and the lord chancellor observed: "What is the consequence of the company receiving such a report (if you can separate the company from the directors,) and publishing it to the world? It must be taken, as between the company and third persons, to be a representation of the company. The company as an abstract being, can represent or do nothing. It can only act by its managers, &c. Now it is plausibly urged that these reports were not made by the company, but to the company. In form that is so. No doubt they are reports made to the company; but I assume for the present, that they were made to the company under such circumstances that what they so report is known, and intended to be known, not only to the shareholders, but to all persons who may be minded to become shareholders, just as if they were published to the world. The exigencies of society demand that reports so made, and so circulated, should be deemed to be the reports of the company."

Then, the lord chancellor discusses a proposition urged on the part of the plaintiffs, growing out of the fact that the defendants were themselves the owners of 1,100 shares in the company, previous to the purchase in question. He says: "Therefore, I come to the conclusion, that if directors in the discharge of their duty of making annual reports, giving a correct representation of the state of the funds of the company, fraudulently and with a view to raise the value of the shares, misrepresent what the state of the company is, under such circumstances that third persons, or even shareholders (whom for this purpose we may treat as third persons) are deceived,

and act upon that misrepresentation, the persons so deceived have a right to treat themselves as having been fraudulently deceived by the company."

We perceive in this how clearly the position is defined as concerning only cases where a previous stockholder is induced into a new contract by subsequent fraudulent representations, authorized or assumed to be by the company, and of the falsehood of which, doubtless, he must be ignorant.

The opinion of Lord St. Leonard upon the general questions, deserves great attention.

There are considerations of a general nature, connected with this question, very similar to those which lie at the foundation of the rules forbidding a dealer with a corporation from impeaching its corporate existence, or the validity of its transactions with him. (*Palmer* agt. *Lawrence*, 1 *Sand. S. C. Rep.* 170; *Brower.* agt. *Appleby*, 1 *id.* 168; *Hill* agt. *Reed*, 16 *Barb. Rep.* 287.) They should teach us at least the utmost caution in dealing with a claim, the novelty of which induces, in my mind at least, a distrust of its legality.

The demurrer as to this part of the answer, is well taken. Judgment for the plaintiffs therein, is to be had with costs.