PATTERSON, J.
—We see no good reason for differing with the court below in its conclusion not to appoint a receiver pendente lite of the defendant corporation. The grounds of the application made by the attorney general were that the defendant was insolvent and unable to pay its debts, and had violated previous provisions of the laws under which it was incorporated and of statutes of the state binding upon it, whereby it incurred a forfeiture of its rights and franchises, and became liable to a judgment of dissolution; and the affidavits of Messrs. McCabe and Cordon, upon which the motion was founded, allege as reasons for a receivership that there are funds and property of the corporation, in various forms, which need immediate care and attention, and should therefore, be placed in the custody of the court. The duty of the attorney general to apply for, and the authority of the court to appoint, a receiver of *193 such a corporation as this, are matters of statutory regulation, Code Giv. Proo. §§ 1785,1786, 1788, 1810; but a clear case of violation of law, actual insolvency, insufficiency of assets to justify the continuation of business, or acts showing that the a Bairs of the corporation are being carried on fraudulently or unlawfully, must be presented before the court will interfere. In this case, the action of the court is asked for on two principal grounds of complaint, namely, that the defendant, a mutual fire insurance corporation, was at the time this action was begun, insolvent, having an excess of indebtedness over assets of $53,091.19, and that it has violated the law in that 20 per cent, of the capital stock notes was not paid in cash, as required by the insurance law. The exhibit of the company’s affairs, from which the conclusion is drawn by the plaintiff that it is insolvent, is contained in a report, annexed to the complaint, made to the superintendent of insurance by official examiners; and upon the basis of the unqualified adoption of that report, insolvency of the corporation would appear. But the examiners omitted to credit the corporation with $160,000 of capital stock notes, such as are authorized by the law under which this defendant was organized and is doing business. All these notes are now in the possession of the company. They are in form and certified as required by the statute. They are held as security for losses and claims. Ho assessment has ever been made upon them and the»makers are liable thereon for the full amount thereof.. Mr. Walton, the secretary of the company, swears “that, upon the organization of the defendant, it had, in compliance with law, 400 applications for insurance, premiuns on which amounted to $200,» 000, of which $40,000 was paid in cash, and notes of solvent parties, founded on actual and bona fide applications for insurance, for $160,000.” Why these notes are entirely ignored is not made to appear. The stand as capital or as security for all losses and claims until the accumulation of invested profits equals the amount of cash capital required to be possessed by stock fire insurance corporations, — the liability of the makers being proportionately reduced as profits accumulate,—and are to be taken, into account in the ascertainment of the financial condition of the company. G-iving the defendant the benefit of this asset, the charge of insolvency falls to the ground.
The second serious charge upon which the decision of the motion under review was based is that the defendant violated the law by non compliance with that provision of the statute which requires-20 per cent, of the $200,000, of premiums referred to in section 111, c. 680, Laws 1892, to be paid in in cash before the company may begin business. Under that requirement, the de» ' fendant was bound to have available, for all purposes, the sum of $40,000 in cash when it began transacting business. Its officers reported to the insurance department that it was possessed of that amount The examiners of the insurance department have declared that the report was false, and that, instead of having that amount of cash on hand, they merely held 400 sight drafts of $100 each, which were deposited with the Trademen’s Bank in. the city *194 oE New York; and Hopkins, an accountant, swears that he was told by the manager of the company that these 400 drafts were never paid, but that $40,000 was borrowed on them by the company from the bank. Mr. Skinner, the manager, denies having made that statement, and other affidavits show that the company never had any relation whatever with the bank as to these drafts, except to receive the credit, as cash, of the proceeds of the 400 drafts, which by arrangement between the bank and the makers of the notes, were, without any intervention of the company, received on deposit as a cash asset of the company, and credited as cash on the bank pass book of the company. This fact seems established by abundant evidence, and the bank credit existing, the company was entitled to its use, and could draw for the full amount in money as and when it was needed. The subsequent history of the company’s relations with the Trademen’s Bank is not controlling upon the particular subject of fraud or noncompliance with law at the time the company began business, now under consideration. That some officers of the corporation committed gross-improprieties and irregularities must be conceded; but as soon as the directors became aware of them, those acts were repudiated by formal resolution of the directors. Some of these acts were highly reprehensible. The check for $12,500 given on August 6, 1894, purporting to be for return premiums, but in reality given to take up 125 of the sight drafts, was a great wrong; but it was without authority. And the giving of the check for $21,-400 to the American Exchange Bank, to secure 214 similar drafts were equally culpable; but that act was also disavowed. Repara- ' tion for these wrongs is, however, tendered. Readiness, willingness, and ability to make good the impairment are shown, and the company has given notice to that effect to the insurance department, and has claimed the benefit of the 80 days’ grace the statute in which to accomplish that object. We have no reason to doubt the sincerity and good faith of the offer. We do not assent to the view that section 43 of chapter 690 of the Laws of 1892 operates as a limitation upon those provisions of the Code of Civil Procedure defining the cases in which the attorney general may institute an action of this character. There may be many cases where immediate action is called for, and where a delay of 30 days might work irreparable injury. In a doubtful case, however, such as the present, we consider that the ability and the offer of the company to restore its impaired capital by supplying funds, to any amount directed by the insurance department, are circumstances proper to be considered upon the application. With the other facts to which we have adverted, they furnish an additional reason for the exercise by the court of its disoretiog adversely to the appointment of a receiver.
The order appealed from, under the condition upon which it was granted, should be affirmed, with $10 costs and all disbursements.
All concur.