(22 App. Div. 1.)

## UNITED GROWERS CO. v. EISNER.

(Supreme Court, Appellate Division, First Department. November 12, 1897.)

1. CORPORATIONS—ACTIONS FOR SUBSCRIPTIONS—ESTOPPEL TO DENY INCORPORA-
TION.
An original incorporator and director of a company, who took part in
all that was done by way of incorporation, and in conducting its business for
a time, cannot, in an action against him upon his subscription to its stock,
question its proper incorporation.

2. SAME—VALIDITY OF SUBSCRIPTION.
In the case of an original subscription for stock, made for the purpose of
organization of a corporation, it is not necessary to its validity that 10 per
cent. should be paid at the time, but in subsequent subscriptions it is es-
sential.

3. SAME—NOTICE.
Where, in subscribing for stock, one agrees to pay for it as the directors
may require by resolution, he is not entitled to notice of the passage of a
resolution, as a condition precedent to an absolute liability to pay.

4. SAME—EVIDENCE.
Minutes of directors' meetings may be read in evidence, if duly authen-
ticated, though not entered in the handwriting of the secretary.

5. SAME—SPECIAL MEETINGS.
Legal special meetings may be held by the directors of a corporation, al-
though the by-laws are silent on the subject.

6. SAME—NOTICE TO DIRECTORS.
A person who has been elected a director of a corporation, but has not yet,
either expressly or by implication, accepted, is not entitled to notice of a
special meeting.

7. SAME—SUBSCRIPTIONS BEFORE CERTIFICATE FILED.
Under Business Corp. Act, § 3, providing that a business corporation shall
not transact business until a certain certificate is filed, the obtaining of
subscriptions to its own capital stock, and compelling payment thereof, is
no part of its business.

8. SAME—RELEASE FROM SUBSCRIPTION.
In an action to recover an unpaid balance of a subscription for stock, de-
fendant set up an alleged release of the obligation by the president of the
corporation, with nothing to show that the corporation acted in the matter,
or that there was any consideration for the release. *Held* insufficient to
discharge the liability.

Action by the United Growers Company against Mark H. Eisner.
Motion by defendant for a new trial on exceptions ordered to be
heard in the first instance in the appellate division. Affirmed condi-
tionally.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON,
O'BRIEN, and INGRAHAM, JJ.

Sol. Kohn, for plaintiff.

George W. Carr, for defendant.

RUMSEY, J. The action is upon two separate subscriptions which
the defendant made to the stock of the plaintiff. The defendant was
one of the original incorporators of the company, and at the time of
that incorporation he subscribed for 35 shares of stock, upon which
was paid $350. This was done on the 14th day of August, 1891.
Subsequently, and on the 20th day of August, 1891, he made a sub-

scription for 163 shares of stock, which included the previous subscription of 35 shares; and at that time he paid into the treasury of the company the sum of $4,000, for the purpose of making good his subscription then made, and, as he says, that the remainder above what was necessary to pay the 10 per cent. should be applied upon the first subscription which he had made.    It is claimed by the plaintiff that on the 28th day of June, 1894, a resolution was passed by which the amount unpaid upon the defendant's subscription to the stock was called, and, no payment having been made in response to that call, this action was begun.    Various exceptions were taken by the defendant upon the trial, which are now insisted upon, and these will be considered in their order.

It is said in the first place that it affirmatively appears that the plaintiff was not properly incorporated, for various reasons which are alleged by the defendant.    Upon that point it is only necessary to say that the defendant was one of the original incorporators, and also one of the directors, of the company.    He took part in all that was done by way of incorporation, which included the filing of certificates of organization in the proper offices, and also in conducting the business of the company, as a director, from the time of its organization, on the 10th of August, 1891, until he resigned that place, on the 19th of October of that same year.    In the face of these facts, when an action is brought against him upon his subscription to the stock of the corporation he is not in a situation to question that it was properly organized.    Railroad Co. v. Carey, 26 N. Y. 75; Warehousing Co. v. Badger, 67 N. Y. 294.

It is claimed that the defendant's subscriptions to the stock were void because 10 per cent. was not paid at the time of making the subscription.    There were two subscriptions,—one for 35 shares of stock, as to which there is a dispute as to whether the 10 per cent. was paid or not.    But this was an original subscription made for the purpose of organization of the company, and it was not necessary that 10 per cent. should be paid upon it; so whether it was paid or not is a matter of no importance.    Stock Corporation Law, § 41; 2 Rev. St. (9th Ed.) 1018; Railroad Co. v. Mason, 16 N. Y. 451.    As to the subscription for 128 shares, which was made after the corporation was organized, there can be no question that it was necessary that 10 per cent. should be paid upon it.    Railroad Co. v. Clarke, 25 N. Y. 208.    But there is no dispute between the parties as to the payment of a sum of money at the time that subscription was made.    Neither is there any substantial dispute that it was paid for the purpose of making the subscription valid.    Curiel says that it was intended to be 10 per cent. upon each of the subscriptions then made, whether that of the defendant or of other people, and that it was received for the express purpose of making all the stock subscriptions good.    It is true that the defendant denies this, but he speaks of the payment of $4,000 then made by him as "this ten per cent.," and he says that his counsel told him that the payment complied with the law requiring 10 per cent. to be paid into the company for the stock subscribed for; and he at once swore that the 10 per cent. had been paid.    It is true, he swears that it was

then said by him that he desired $3,500 of this sum to be paid upon his first subscription for stock, and the remaining $500 to apply upon the second subscription. But he also expressly says that this payment made his subscription a valid one. In view of these facts, we think that the defendant is not in a situation to say that the 10 per cent. was not paid upon his subscription at the time it was made, because he expressly says that the payment made good the subscription, and it was so regarded and testified to. The fact that he insisted that the payment should be applied upon another subscription for stock is a matter of no importance, unless it was agreed at that time by the plaintiff's officers who received the subscription that it should be so applied, but even the defendant does not testify that any such thing was agreed to. For these reasons he is not now in a situation to say that the payment which was then made shall not apply in the way in which it was intended to apply at the time.

It was claimed by the plaintiff that on the 28th day of June, 1894, a resolution was passed calling upon the defendant to pay the balance due upon his two subscriptions, which up to that time were unpaid. The second subscription, made on the 19th of August, 1891, contained an agreement to pay for the stock then subscribed for at such times, and on such installments, as the board of directors of the said company might by resolution require. The express agreement of the defendant, by that subscription, was to pay for the stock at the times, and upon such installments, as the resolution might require. He did not stipulate that any notice of the resolution should be given to him, and consequently he was not entitled to any notice of its passage, as a condition precedent to an absolute liability on his part to pay. If a valid resolution was passed, he became liable to pay, although he had no actual notice of its passage. Mor. Priv. Corp. § 147. The question, then, is whether this resolution was legally passed. It is claimed by the defendant that the resolution was not competent evidence, because it was not sufficiently authenticated. But it appears that it was contained in the regular book of minutes kept by the secretary of the corporation, and its correctness was authenticated by the secretary, and his signature was proved. That was entirely sufficient to permit the plaintiff to read the resolution in evidence. It is not necessary that the secretary of a corporation, whose duty it is to keep the minutes of the meetings, should enter those minutes in his own hand in the record book; but it is sufficient if he causes them to be properly and correctly recorded; and, after that has been done, his signature, in the proper place, thereby authenticating their correctness, is sufficient to entitle them to be read in evidence. Wells v. Rubber Co., 19 N. J. Eq. 402.

But it is complained that the meeting does not seem to have been properly called, for the reason that the by-laws of the corporation, which were read in evidence, provide that the board of directors shall meet on the first Wednesday of the month, and do not provide for any other meetings. It is not necessary, however, that the by-laws should provide for the calling of a special meeting of the directors, to enable such a meeting to be legally held. If the directors actually

meet in special meeting in a proper place, and all the directors have been notified that such meeting is to take place, or they are all present and express no objection, there can be no doubt that a legal meeting may be held; and any action of the corporation at such meeting is valid, if there is no regulation forbidding the holding of such meeting. Certainly no one can object to the regularity of such a meeting, as long as no objection was taken at the time, and the by-laws of the corporation do not forbid it. Leavitt v. Yates, 4 Edw. Ch. 136, 162.

But it is said that all the directors of the corporation were not notified that such meeting was to be had. It is conceded on all hands that there were at that time three directors of the corporation; and the defendant claims that one Gershel had been elected a fourth member of the board, and was then actually acting as such, and there is no dispute that he did not receive any notice that such meeting was to be held. It cannot be denied that, unless some other provision is made by law, it is necessary to the validity of a special meeting of a corporation that those persons who are directors shall have notice that the meeting is to be had, in the manner which the regulations prescribe; and, if Gershel was in fact a director of this corporation, the meeting was not valid, because it is conceded that he was not notified. But there is no sufficient evidence that at that time he was a director of the corporation. That he was elected such is very true, but the witness Curiel says that he had not accepted his election, and had never acted as a director, and that evidence is entirely undisputed. For that reason he was not yet a director, although he had been elected, because the mere election of the stockholders does not make him a director. There must be, in addition, an acceptance on his part of the duties of the office, either express, or implied from the circumstances of the case. Cameron v. Seaman, 69 N. Y. 396. Nothing of this kind was shown in regard to Gershel, and for that reason it cannot be said that he was then a director of the corporation, and entitled to notice of its meetings. It appears from the undisputed testimony in the case that the only three persons who were then directors were present at the meeting, and voted for the passage of the resolution; and, that being so,—the meeting being a legal one,—the resolution was properly passed. For these reasons the liability of the defendant to pay his subscription upon these shares was sufficiently fixed when that resolution was passed, and the amount then unpaid became due at the time fixed by the resolution, which was the 8th day of July; that being 10 days after the passage of the resolution.

But it is objected by the defendant that the resolution is not valid, because no such certificate as required by the statute as a condition precedent to the transaction of the business of the corporation had been filed. It appears that such a certificate was made on the 19th of August, 1891, and it was then filed in the office of the county clerk of New York county; but it does not appear that it was also filed in the office of the secretary of state, as is required by the statute. But we think the defendant is not in a situation to raise this

question.    He concedes that he swore to that certificate after it was prepared, and that he took part in the transaction of whatever business was done by this company from the time that the certificate was filed in the clerk's office of New York county down to the time that he resigned as director, in October, 1891.    That being so, we think he is not in a situation to raise the objection that the proper steps had not been taken on the part of the plaintiff to transact the business for which it was incorporated.    But, if that were not so, still the objection is not well taken.    The statute says that no business corporation shall engage in the transaction or management of its business until certain things have been done, and a certificate of that fact has been filed in certain offices.    Business Corp. Act, § 3.    The business for which the plaintiff was incorporated, as shown by its subscription, was the buying, selling, importation, and exportation of wines and liquors.    To obtain subscriptions to its capital stock, and to compel the payment of these subscriptions, was no part of that business.    It was, however, an essential thing to be done by the company before any business could be transacted.    Until a certain portion of its capital stock had been subscribed, and a certain per cent. had been paid upon it, the company had no right to do any business.    If it should be held that, after a company had been incorporated, the procuring of further subscriptions to its stock, and the payment of these subscriptions, to an extent sufficient to give it an authority to transact business under the statute, and money sufficient to do the business for which it was incorporated, was a transaction of its business, no company could ever proceed beyond the formative stage, because, after it had been organized by the subscription of the statutory amount of stock, and the payment of 10 per cent. upon it, it would be utterly unable to go any further, and sell any further stock and obtain any further money upon it.    It is hardly worth while to have any further discussion of that proposition.

The final objection which the defendant makes to the payment of this subscription is that he was released from it by an agreement made with the corporation on the 17th of October, 1891.    The testimony in that regard is given by himself.    He says that on that day he had some conversation with Mr. Curiel, who was then the president of the company, in reference to his connection with it.    Curiel said that he should be relieved from all liabilities and obligations against the company, and they should repay him the $4,000 which he put into it, to which he replied, that he saw they were just beginning business, and he did not want to take them short, but he was willing to take their note for $4,000, and thereupon the note was given to him.    That this conversation was had is denied by Curiel, but, as a verdict was ordered against the defendant, his exception to that ruling must be sustained if this evidence, in any aspect of it, would be sufficient to warrant the jury in finding that the defendant was released from further liability upon his subscription.    There is no aspect of the case in which it can be claimed that this release was valid.    There is nothing to show that it was done at a meeting of the directors. On the contrary, there is no claim that more than one director besides

Curiel was present, the defendant himself having resigned two days before.   It is not claimed that the company, as such, took any action upon this alleged contract to release the defendant, and clearly the president had no authority to make any such contract.   Olney v. Chadsey, 7 R. I. 224.   In addition to that, there is no pretense that there was any consideration for anything of the kind; and, even if the company itself had acted in the matter, the alleged release, being without consideration, would have been void.   Zirkel v. Opera-House Co., 79 Ill. 334.   For this reason, without considering other reasons that might be suggested, the alleged release is not sufficient to discharge the defendant from his liability upon his subscriptions.

These suggestions dispose of all the points made by the defendant which were considered necessary to be examined, and the result of them all is that, upon the whole case, it was proper that the judge should order a verdict against the defendant for such sum as was actually due to the corporation.   But we think that there was sufficient dispute as to the amount actually due from the defendant to require that question to have been submitted to the jury, had a request to that effect been made by the defendant.   No such request seems to have been made, but the defendant did expressly except to the direction of the court fixing the amount of the verdict at $16,952.40, upon the ground that he should be credited with the whole $4,000 paid on August 19, 1891.   The question whether the verdict is proper is sufficiently raised by that exception.   It is quite clear, however, that, upon all the evidence, there was a miscalculation as to the amount due, and that miscalculation should be corrected. It appears, and is not disputed, that the plaintiff paid $350 at the time of subscribing to the 35 shares of stock, and $4,000 at the time of subscribing to the 128 shares of stock, a few days later.   It is claimed by the plaintiff that a portion of this money was paid back to him at different times, upon a note for $4,000, which was undoubtedly given to him on the 19th of October, 1891.   But we are of opinion that these payments are not properly to be charged upon the sum of $4,000 which was paid upon these subscriptions, so as to deprive the defendant of the right to be credited for those sums as payments on his subscriptions at the time when they were made.   The other advances which were made were advances of the money of the corporation to him upon a note which was given entirely without consideration, as we have seen, and for those the defendant is bound to answer in such action as might be brought against him for money had and received.   Those advances legally had nothing to do with the money paid upon the stock.   When that money was paid it was a complete transaction in itself, and it then stood as a credit to the defendant upon his stock subscriptions, to which he was entitled whenever he should be called upon to pay the balance of those subscriptions.   The subsequent payments to him were not made upon any legal contract to release those subscriptions.   They stand simply as money advanced, for which he must answer to the corporation.   In this action, which involves solely the amount which he is bound to pay upon his stock subscription, he is entitled to have

credited to him such amount as he paid to apply upon the subscriptions as they were made. It appears that the first subscription, on the 14th of August, 1891, called upon him to pay $3,500, and that he actually did pay upon that amount the sum of $350, leaving due upon that subscription $3,150. On the 19th of August, as is conceded, he paid $4,000 more at the time of making the second subscription of 128 shares. It was intended that that payment should be applied so far as was necessary to make good his subscription, and therefore 10 per cent. of it, at least, being $1,280, must have been applied upon the 128 shares. That left of that payment $2,720. The defendant says that he directed a portion of that to be applied upon his first subscription, upon which he owed $3,150, and which was presently due at the time when it was made. Adding to the $3,150 then due the interest to the 19th of August, which is $3.11, we find the amount due upon that first subscription at that time was $3,-153.11. The sum of $2,720, being the excess of the $4,000 not necessary to make good the second subscription, should be applied upon this sum; leaving due on the 19th of August, on the first subscription, $423.11. The interest on that sum to the time of trial, the 4th day of January, 1897, was $136.42; making the total amount due upon the first subscription at the time of the trial $559.53, instead of $4,-107.60. There was unpaid upon the second subscription, after deducting $1,280, $11,520. That became due on the 8th day of July, 1894. Interest on that sum was $1,324.80. This amounts to $12,-844.80, so that the amount due from the defendant upon these two subscriptions at the time of the trial was $13,404.33, instead of $16,-952.40, which was the amount of the verdict ordered. The verdict should therefore be reduced to the sum of $13,404.33; and, being so reduced, the motion for a new trial should be denied, and judgment ordered for the plaintiff upon a verdict for that sum, without costs to either party in this court. If the plaintiff, however, does not see fit to stipulate for such a reduction of the verdict, the exceptions should be sustained, and a new trial ordered, with costs to the defendant to abide the event of the action. All concur.