(33 App. Div. 231.)

RAEGENER v. McDOUGALL.

(Supreme Court, Appellate Division, First Department. August 10, 1898.)

CORPORATION—ESTOPPEL TO DENY ORGANIZATION.
    One who participated in the organization of a fire insurance company.
    and in its subsequent management, and delivered to it a capital stock note,
    as required by Laws 1892, c. 690, § 111, and received the benefit thereof,
    in the form of a policy of insurance, cannot thereafter, to avoid payment
    of the note to its receiver, deny its legal existence.

Appeal from trial term, New York county.

Action by Louis C. Raegener, as receiver of the Equitable Mutual Fire Insurance Company, against Hugh McDougall. Exceptions by defendant and motion for new trial ordered to be heard at the appellate division. Judgment for plaintiff.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, RUMSEY, and O'BRIEN, JJ.

Alfred A. Cook, for plaintiff.

Asa A. Alling, for defendant.

McLAUGHLIN, J. This action was brought to recover the amount of the following note, executed and delivered by the defendant to the Equitable Mutual Fire Insurance Corporation, at the time of its organization:

"No. 152.                                                $400.00.

"Capital Stock Note of the Equitable Mutual Fire Insurance Corporation of New York.

"New York, February 6, 1894.

"On demand, I promise to pay to the order of the Equitable Mutual Fire Insurance Corporation, at its offices in the city of New York, the sum of four hundred dollars. Value received. Payment hereof is subject to the conditions and obligations of the insurance law of the state of New York (chapter 690, Laws of 1892), and the by-law of the said corporation printed on the back of this note.                    Hugh McDougall, 198 Broadway."

The answer interposed set up several defenses, but the one chiefly relied upon (at least, upon the argument before us) was that the corporation never was legally organized, in that it did not have in cash at the time it commenced to do business the $40,000 required by section 111 of chapter 690 of the Laws of 1892. So much of section 111 of the statute referred to as is material to the question presented reads as follows:

"No domestic mutual fire insurance corporation shall commence business if located in the city of New York, or in the county of Kings, * * * until agreements have been entered into for insurance with four hundred applicants, the premiums on which shall amount to two hundred thousand dollars, of which forty thousand dollars shall have been paid in in cash, and notes of solvent parties, founded on actual and bona fide applications for insurance, shall have been received for the remainder. * * * Such notes shall be called capital stock notes and shall be payable in part or in whole at any time when the directors shall deem the same requisite for the payment of losses and such incidental expenses as may be necessary for transacting the business of the corporation."

Upon the trial, evidence was offered on the part of defendant tending to show that this section of the statute was never in fact complied with, and that the statement made to the insurance department at the time of the organization, that $40,000 had been actually paid in, in cash, was false and untrue; that the corporation, instead of accepting from the 400 incorporators the cash required by the statute, took 400 sight drafts from them, of $100 each, and upon these procured a loan of $40,000. And it is strenuously urged that, by reason of the fraud practiced upon the insurance department, the corporation never had any legal existence, and therefore the defendant never became legally obligated to pay the note in suit. The defense thus relied upon to defeat a recovery is indeed a novel one, in view of the defend-

ant's relations to the corporation both prior and subsequent to its incorporation. The record shows that he was one of the incorporators, and that upon its incorporation he became one of its directors, and acted in that capacity until the corporation, hopelessly insolvent, passed into the hands of a receiver. And in this connection it is interesting, at least, to recall the fact that, only a few months prior to the time the receiver was actually appointed, proceedings were instituted by the attorney general of the state to have a receiver appointed, and one of the grounds urged by him was that fraud had been practiced upon the insurance department in the organization of the company,—especially in that the $40,000 required by the statute had never been paid in, in cash, by the incorporators. The application was resisted by the insurance company, and, so far as appears, with the sanction and approval of all of the directors. The application was then denied, and on appeal to this court the action of the lower court was affirmed. People v. Equitable Mut. Fire Ins. Co., 1 App. Div. 84, 37 N. Y. Supp. 80. One of the attorneys who represented the insurance company on that appeal represents the defendant on this. But we do not consider it necessary, in passing upon the question here presented, to determine whether or not the corporation was in fact legally organized. It is sufficient for our purpose that the defendant participated in the organization; that he delivered the note in suit for the purpose of perfecting the organization; that he thereafter received the benefit, in the form of a policy of insurance, on the theory that the corporation had a legal existence; and he cannot now be heard to say, in view of all these facts, for the sake of evading personal liability, that the corporation never was a legal organization. Defendant and the other incorporators represented to the insurance department that the corporation had complied with the law, and, upon such representation, authority was given to transact business, and by reason of which debts to the extent of upward of $90,000 were incurred; and now, when the defendant is asked to pay his proportionate share, he cannot be permitted to escape doing so under cover of an illegal organization. If the incorporators deceived the insurance department, that is no reason why the creditors should be defrauded. The corporation was sufficiently organized to enable creditors, or a receiver representing them, to compel the incorporators to do what they agreed to do. Aspinwall v. Sacchi, 57 N. Y. 338; Warehousing Co. v. Badger, 67 N. Y. 298; Chubb v. Upton, 95 U. S. 665; Hill v. Reed, 16 Barb. 287; United Growers Co. v. Esiner, 22 App. Div. 1, 47 N. Y. Supp. 906.

In Aspinwall v. Sacchi, supra, Judge Earl observed:

"A defect in the proceedings to organize a corporation is no defense to a stockholder sued to enforce his individual liability, who has participated in its acts of user as a corporation de facto, and appeared as a stockholder upon its books when the debt for which he is sued was contracted."

The case of Hill v. Reed, supra, is directly in point. In that case the plaintiff, a trustee appointed for the benefit of creditors of an insurance company organized under chapter 308 of the Laws of 1849, instituted an action to recover the amount of a note similar to the one in suit, there termed a "premium note." One of the defenses inter-

posed was much like the one here insisted upon, namely, that the note never had any legal inception, because the insurance company had failed to comply with the provisions of the statute in reference to the organization and acceptance of the note.   The court overruled the defense, saying:

"But, had there been any failure of the company to conform to the requirements of the statute, I do not think the defendant would have the right to avail himself of the objection.  He made a proposition for insurance to the company, assuming that it had legal capacity to entertain such proposition, and enter into an agreement with him in accordance with his proposition. Such an agreement was entered into between him and the company.  He has received the benefit from the agreement for which he stipulated.  He has been credited and paid for the use of his credit as a part of the capital of the company.  It does not lie with him now, when called upon to perform the agreement on his part, to say that his proposition was not such as the statute contemplated, or that the company had not legal authority to contract with him."

And in United Growers Company v. Esiner, supra, where the defendant was one of the original incorporators, and sought to resist payment of his subscription on the ground that the corporation was not properly incorporated, this court (Mr. Justice Rumsey delivering the opinion) said:

"Upon that point it is only necessary to say that the defendant was one of the original incorporators, and also one of the directors, of the company.  He took part in all that was done by way of incorporation, which included the filing of certificates of organization in the proper offices, and also in conducting the business of the company, as a director, from the time of its organization, on the 10th day of August, 1891, until he resigned that place, on the 19th day of October of that same year.  In face of these facts, when an action is brought against him on his subscription to the stock of the corporation he is not in a situation to question that it was properly organized."

Under the statute the capital stock notes provided for are intended to be, and are to that extent, the capital of the corporation, and they continue to be such until profits are accumulated sufficient to retire them.   They are executed and delivered by the makers for the purpose of enabling them to organize the corporation.   It would be a sad commentary upon the law if payment could be avoided by reason of a fraud practiced by the makers, or some of them, in perfecting the organization.   It is a well-recognized principle of the law that one cannot take advantage of, or reap a benefit from, his own dishonest or fraudulent acts.   Upon principle and authority alike, therefore, it must be held that one who takes part in the organization of an insurance company, and thereafter participates in its management, cannot, for the sake of avoiding personal liability, deny its legal existence.

The exceptions of the defendant should be overruled, the motion for a new trial denied, and judgment ordered for the plaintiff upon the verdict, with costs.   All concur.