### RAEGENER v. HUBBARD.

(Supreme Court, Appellate Division, First Department. May 5, 1899.)

1. MUTUAL INSURANCE CORPORATIONS—CAPITAL STOCK NOTES—ESTOPPEL.
    One becoming a member of a mutual fire insurance corporation, by executing a capital stock note that enabled the corporation to commence business in New York City under Laws 1892, c. 690, § 111, requiring the reception of a certain amount of capital stock notes before the commencement of such business, is liable on the note to the corporation's receiver, though he signed the note with the understanding that he was to be an incorporator for a limited period only, and the corporation had failed to comply with its agreement to procure to be substituted in the place of a note a similar note executed by some other person.

2. APPEAL—DIRECTING A VERDICT—PRESUMPTIONS.

    Where, at the close of a trial, both parties asked for a direction of a verdict, and neither requested the submission of any question to the jury, all facts and inferences necessary to support the judgment, which could have been derived from the facts of the case, will be presumed to have been found by the court in favor of the party for whom a verdict was directed.

Appeal from trial term, New York county.

Action by Louis C. Raegener, as receiver of the Equitable Mutual Fire Insurance Corporation of New York, against Norman Hubbard, Jr. Judgment for plaintiff (56 N. Y. Supp. 173), and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

Everett V. Abbot, for appellant.

Alfred A. Cook, for respondent.

INGRAHAM, J. The action was brought to recover upon an instrument in writing, which is set out in the complaint, as follows:

"No. 171.　　　　　　　　　　　　　　　　　　　　　　　　　$400.00.

"Capital Stock Note of the Equitable Mutual Fire Insurance Corporation of New York.

"New York, February 12th, 1894.

"On demand, I promise to pay to the order of the Equitable Mutual Fire Insurance Corporation, at its offices in the city of New York, the sum of four hundred dollars, value received. Payment hereof is subject to the conditions and obligations of the insurance law of the state of New York (Laws 1892, c. 690), and the by-law of the said corporation printed on the back of this note.

"Norman Hubbard, Jr.,

"137 Broadway, New York."

The complaint alleges that this note was given upon the application and agreement for insurance of the above-named defendant in the said corporation when it should have been organized, and under and pursuant to said agreement, and in part consideration of a policy of insurance to be issued thereupon to the said defendant by said corporation; and that thereupon, and under and pursuant to said application and agreement for insurance, and within 30 days after the organization of said corporation, a policy of insurance in the amount of $5,000 and for the term of one year was duly issued to the above-named defendant. The defendant denied all of the allegations of the complaint, except that he admits that he had refused payment to the plaintiff of any sum of money whatever; and he alleges, as a separate defense, that a contract in writing (of which a copy is annexed to his answer, and which is the instrument sued on) was delivered to the Equitable Mutual Fire Insurance Corporation of New York upon its agreement that, within a reasonable time after it had been used by the company for the purposes of its organization, said company would procure to be substituted in its place a similar contract in writing, executed and delivered by some other person, and that the company had never procured the substitution of any other contract in writing in the place and stead of the defendant's contract. Upon the trial the plaintiff introduced in evidence the charter of the com-

pany, approved by the superintendent of insurance, and the certificate of such superintendent that the corporation had complied with all the requirements of law to be observed by said corporation, and authorizing it to transact business as a mutual fire insurance corporation, as particularly described in section 110 of chapter 690 of the Laws of 1892. The certificate of incorporation is in the form prescribed by the insurance law, duly executed and acknowledged by the incorporators, and annexed to this certificate is a schedule "containing a particular description of all the assets owned by the Equitable Mutual Fire Insurance Corporation on the 4th day of April, 1894, composing the original capital of said corporation paid in by the applicants on its organization." In this schedule appears the name of the applicant, Norman Hubbard, Jr., amount of cash paid in by him as $100, and amount of his note $400. With this proposed charter and this schedule is a report of the examiners, certifying that the provisions of the statute have been complied with, and a certificate of the Tradesmen's National Bank that this proposed corporation had on deposit with this bank to their credit the sum of $40,000. The superintendent of insurance thereupon certified that the Equitable Mutual Fire Insurance Corporation of the City of New York had complied with all the requirements of the law to be observed by such corporation or organization, and that it was organized to transact the business of a mutual fire insurance corporation as particularly prescribed in the insurance law. Thereupon, under the statute, the incorporation was complete, and the corporation was authorized to transact business as a mutual fire insurance company.

By section 111 of the insurance law (Laws 1892, c. 690), it is provided that "no domestic mutual fire insurance corporation shall commence business if located in the city of New York, or in the county of Kings, * * * until agreements have been entered into for insurance with four hundred applicants, the premiums on which shall amount to two hundred thousand dollars, of which forty thousand dollars shall have been paid in cash, and notes of solvent parties, founded on actual and bona fide applications for insurance, shall have been received for the remainder"; that "such notes shall be called capital stock notes and shall be payable in part or in whole at any time when the directors shall deem the same requisite for the payment of losses and such incidental expenses as may be necessary for transacting the business of the corporation." This statute thus became a part of the stock note, and the defendant must be charged with notice of the provisions of the statute and the purposes for which this note was given. This defendant had agreed to be one of those who was to become a member of the company proposed to be incorporated, and his obligation upon the note to the insurance company was to take the place of the capital stock of the corporation, and to furnish the capital upon which the company was authorized to do business. It was upon the faith of the fact that the defendant, with the other applicants for insurance, had actually and in good faith executed and delivered a note, and had thus become bound to pay to the company the amount represented thereby, that the corporation received its charter, and was authorized to transact business. The

making of this note and the making of the application for insurance
was a distinct representation by the maker of the note to the state,
and through the state to those doing business with this corporation,
that the maker of the note had joined in asking for a charter for the
corporation, and had agreed to become responsible to the corpora-
tion for the sum of $400 as a contribution of capital to enable the
corporation to receive its charter and transact business as an insur-
ance company. The receiver of the corporation, representing, not only
the corporation, but also the creditors, now seeks to enforce this obli-
gation assumed by the defendant. The defendant, by his answer, al-
leges that this stock note was delivered by him to the corporation
upon condition that, within a reasonable time after it had been used
by the company for the purposes of its organization, the said com-
pany would procure to be substituted in its place a similar contract
in writing, executed and delivered by some other person; thus admit-
ting that the obligation was given by him to be used by the company
for the purposes of its organization.

Under the general issue raised by the answer, he seeks to avoid
the payment of the obligation upon several grounds. The first
ground is that "no policy was issued within thirty days after the
organization of the corporation. Therefore the note in suit re-
mained a mere offer, and never acquired the status of a complete
contract." The obligation of the defendant, however, upon its
face, is an absolute promise to pay to the corporation a sum of
money. By it the defendant promised to pay on demand the sum
of $400, and the payment of the note is subject to the conditions
and obligations of the insurance law of the state, printed on the
back of the note. The purpose for which the note was given and
the obligation assumed by the maker under the statute is thus
made a part of the promise. Section 113 of the insurance law,
printed upon the back of the note, expressly provides that "all
capital stock notes of any domestic mutual fire insurance corpora-
tion shall remain as security for all losses and claims until the
accumulation of profits invested as required by law shall equal
the amount of cash capital required to be possessed by stock fire
insurance corporations, the liability of each note decreasing pro-
portionately as the profits are accumulated"; and that "every per-
son effecting insurance in any mutual fire insurance corporation
and his heirs, executors, administrators and assigns continuing to
be so insured, shall thereby become members of the corporation
during the period of insurance and shall be bound to pay for losses
and necessary expenses accruing in and to such corporation in pro-
portion to the amount of his deposit note or notes." Section 115
of the act provides that "every person becoming a member of
any domestic fire insurance corporation by effecting insurance
therein shall, before he receives his policy, deposit his promissory
note for such a sum of money as shall be determined by the di-
rectors of the corporation. Such part of such notes, not exceed-
ing twenty per cent., as shall be required by the by-laws of the
corporation, shall be immediately paid, and the remainder of such
deposit note shall be payable in whole or in part as the exigencies

of the corporation shall require for the payment of losses by fire and incidental expenses of the corporation." That this defendant thus made his application for insurance, and gave this note as the preliminary step towards enabling the company to acquire the charter, and thus make a contract of insurance with him, is conceded; and upon the acceptance of that note by the corporation, with its agreement to issue to the defendant a policy of insurance, the defendant became a member of the corporation during the period for which his contract of insurance was to run, and his stock note was to remain as security for the losses and claims against the corporation until the accumulation of profits invested, as required by law, should equal the amount of the capital required to be possessed by the stock fire insurance company. Before the company could issue its policy of insurance, it was necessary that it should become incorporated, and receive the certificate of the superintendent, by which it was authorized to do business. The issuance of the policy and the execution of the note could not be simultaneous, but the obligation to insure those who had applied for membership, and had executed the stock note, arose as soon as the company became incorporated. The defendant was then entitled to receive his policy of insurance, the policy being the completion of the formal contract which had been assumed by the corporation by the acceptance of the note, and its use for the purpose of acquiring the charter and obtaining the authority to do business, and there was evidence offered on behalf of the plaintiff tending to show that the policy issued to the defendant was actually prepared, executed, and delivered to some one for the benefit of the defendant. The defendant testified that he never received that policy, but as each party asked for a verdict at the conclusion of the evidence, and neither requested to go to the jury, it must be deemed that the court found, as it might from the evidence, that the policy had been in fact delivered.

The other questions presented were disposed of by the case of Raegener v. McDougall, 33 App. Div. 233, 53 N. Y. Supp. 484. The only distinction between that case and this is that in that case the defendant was one of the directors who had signed the certificate of incorporation, but in this case the defendant became a member of the corporation. The note was given by him for the purpose of procuring a charter for the corporation. It was used for that purpose, and by the action of the superintendent of insurance the company became legally incorporated. An objection to the validity of the incorporation, if any exists, could only be taken advantage of by the people of the state. The corporation became legally incorporated upon the issuance of the charter to it by the superintendent of insurance and his authorization to transact business. Of that corporation the defendant became a member, and the legality of the charter issued to the corporation could not be attacked collaterally, but only in a direct proceeding for that purpose, brought by the attorney general. The court, therefore, was right in excluding the testimony tending to show how the account with the Tradesmen's National Bank was opened,

and whether or not the $40,000 which that bank certified it had on deposit to the credit of this corporation was actually paid to the bank in cash.

The defendant offered to prove that he signed the instrument sued on upon the understanding that he was to become an incorporator of the fire insurance company for a limited period only, which was also properly rejected. He signed the note for the purpose of becoming an incorporator, and certainly he remained such incorporator until, by virtue of the substitution, some one was put in his place.

The other objections made by the defendant do not require consideration. Upon the close of the trial both parties asked for the direction of a verdict. There was no request to submit any question to the jury. The court, therefore, was clothed with full power to determine all the facts involved in the case, and all facts and inferences necessary to support the judgment, and which could fairly have been derived from the proofs given, must be deemed to be found in favor of the plaintiff. Bank v. Gerety, 153 N. Y. 411, 47 N. E. 793.

We think that the evidence justified the court in directing a verdict for the plaintiff, and that the judgment appealed from should be affirmed, with costs. All concur.