(58 App. Div. 166.)

RAEGENER v. BROCKWAY et al.

(Supreme Court, Appellate Division, First Department. February 15, 1901.)

1. DIRECTION OF VERDICT—FINDING OF FACT—REVIEW.

Where, in an action on a note for insurance, the testimony as to wheth-
er any policy was issued for the note was conflicting, and on motion by
both parties for a verdict on the evidence the court directed a verdict for
defendants, it will be assumed, on appeal, that the court found as a fact
that no policy was issued.

2. SAME—REPRESENTATIONS OF PROMOTER—FRAUD—LIABILITY ON NOTE.

Insurance Law, § 111, provides that no note executed to a promoter of
a mutual insurance company shall be represented as capital stock unless
a policy is issued on the same within 30 days after organization of the
corporation. Defendants gave their note to promoters of the plaintiff
fire insurance company, and, on failure to organize the corporation within
the specified time, demanded its return, and, by reason of fraudulent rep-
resentations of the promoters that it had been lost, they failed to receive
it, and, on further attempts to secure it, were assured by the manager that
defendants were not members of the company. No insurance policy was
ever issued on the note. Held, that defendants were not liable on the
note, since they had rescinded their offer to take insurance prior to the
organization of the corporation, and their offer to insure was never ac-
cepted by the company.

3. SAME — FRAUDULENT REPRESENTATIONS OF PROMOTER — ADMISSIBILITY
AGAINST RECEIVER.

Where defendants rescinded their offer to take insurance in a proposed
mutual company prior to its organization, and demanded return of their
note executed to the promoters, evidence that the promoters fraudulently
retained the note for months prior to the organization of the company,
and turned it in as assets while defendants were seeking its return, was
admissible against the note in the hands of a receiver of the company.

Appeal from trial term, New York county.

Action by Louis C. Raegener, as receiver of the Equitable Mutual
Fire Insurance Corporation of New York, against George A. Brock-
way as executor, and Edith Brockway as executrix, of the estate
of W. N. Brockway, deceased. From a judgment in favor of de-
fendants, and from an order denying a new trial, plaintiff appeals.
Affirmed.

The plaintiff, as the receiver of the Equitable Mutual Fire Insurance Corpo-
ration, brings this action against the defendants, as executor and executrix
under the will of W. N. Brockway, who died October 24, 1889, to recover upon
a capital-stock note for $400, bearing date of March 7, 1894, and signed "W.
N. Brockway" by the defendant George A. Brockway. The defenses inter-
posed are that the note was not given by the defendants in their representative
capacity; that it was undated, but was given in December, 1892, upon rep-
resentations made by James R. Skinner that the Equitable Mutual Fire In-
surance Corporation would be formed within a very short time, and a policy of
insurance thereupon issued to the defendants, but the corporation was not soon
formed, and, upon demand made during the following year for the return of
the note, it was agreed that the same should be rescinded; that no consid-
eration ever passed for the giving of the note, and its rescission was ratified
by the Equitable Corporation when formed thereafter, in 1894; and, finally,
that the statute of limitations is a bar to the action. The will of W. N. Brock-
way appointed the defendants his executor and executrix, and provided,
among other things: "My said son shall continue said manufacturing busi-
ness in my name with the assets of my estate, and shall execute the powers
herein contained as powers in trust, and shall be accountable to his mother
and sister therefor as trustee, but he shall be protected in carrying on said

business for losses happening without his fault or negligence, and shall be entitled to indemnity out of my estate for any and all liability lawfully incurred within the scope of the powers herein conferred upon him." George A. Brockway testified that he signed the note in question under the name of his father, while conducting the business as contemplated by the will; that the note, when he received it in December, 1892, was accompanied by a letter from Brown & Skinner, urging him to act promptly, and a prospectus of the corporation, which includes the statement: "The time required by law within which to perfect the organization of this corporation is so limited (30 days from date of organization) that it requires a special effort on the part of the incorporation to obtain, before filing the papers with the insurance department at Albany, an agreement with a sufficient number of merchants and manufacturers who would become policy holders in the company. Therefore we hand you herewith a blank application, also a blank capital-stock note, drafted in accordance with law. There is no other obligation assumed in excess of the amount of premium called for in the application, for which you will receive a policy of insurance." The witness further testified that he at once signed and sent the note, but heard no more of the matter, and in the spring of 1893 saw Mr. Skinner, and told him that he had perfected his insurance, and therefore would not want the insurance in the Equitable Company, but wished his note returned, and Mr. Skinner promised to send it; that the note was not returned, and he thereafter wrote for it; that he received a letter dated May 9, 1894, bearing the heading. "The Equitable Mutual Fire Insurance Corporation of New York," and signed, "James R. Skinner & Co., Managers." in which it was said: "We would call your attention to the matter of our company which we succeeded in getting you interested in some time since, but you finally withdrew. The company is now in operation, and we would be pleased to have you permit us to reinstate your note, when we will issue a policy to you for $5,000 for 5 years for the payment of $100 in cash and the reinstatement of your note for $400." To this letter Mr. Brockway replied that, should he be in need of more insurance, he would confer with them. Several fruitless efforts were made to obtain a return of the note, and in 1894, at the office of the Equitable Company, Mr. Skinner replied to inquiries made by Mr. Brockway and his attorney: "The note is not in this company. You are not interested in this company at all. * * * I want to assure you that the note is of no value to any one. The company that we interested you in was not formed, and you need have no worry about the note at all. * * * I do not know where it is, but I remember receiving the note that you withdrew, and I will see if I can find the note and send it to you." The note, Mr. Brockway says, was never sent, nor any policy ever delivered. The plaintiff moved to strike out all the evidence in reference to the letters mentioned, and all conversations, as irrelevant and immaterial, and on the ground that no actual rescission was or could be had; which motion was denied, and exception taken. Thereafter Mr. Pettingill, a policy clerk of the Equitable Company, testified that he knew that a policy for $2,-000 was issued to the defendants April 9, 1894, because of the entry in the books to that effect. Upon the close of all the evidence the court directed a verdict for the defendants, and from the judgment so entered, and from order denying motion for a new trial, the plaintiff appeals.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGH-LIN, PATTERSON, and O'BRIEN, JJ.

Alfred A. Cook, for appellant.

Franklin Pierce, for respondents.

PATTERSON, J.    The learned trial judge in directing the verdict said:

"I think these defendants stand in a different relation from other persons who gave these stock notes. Under the will, in their representative capacity, they had power only to transact the business which was delegated to them, or which they were authorized to transact, by the terms of the will. They

had a right to effect insurance upon any of the property that was put in trade by them under the authority of the will. They would not have any authority to become stockholders in a company as an individual might. They could only effect the insurance, and the object of this stock note * * * was to effect the insurance. There was no insurance effected. Upon that ground alone I think that these defendants are not liable in their representative capacity upon the facts in the case."

As both sides had moved for a direction of a verdict, and it was finally directed for the defendants, we must assume that the disputed questions of fact were resolved in their favor, and it is thus made to appear that it has been found as a fact that no policy of insurance was actually issued and delivered to the defendants.

Section 111 of the insurance law (chapter 690, Laws 1892) provides: "No such note shall be represented as capital stock unless a policy be issued upon the same within thirty days after the organization of the corporation." If, however, we assume from what was said in the Hubbard Case (Raegener v. Hubbard, 40 App. Div. 359, 57 N. Y. Supp. 1018) that the payment of the note is not conditioned upon the issuance of the policy, or if we should reach the conclusion that the powers conferred upon these defendants as executors were sufficient to authorize them to make the note,—neither of which questions we deem it necessary in this case to decide,—we still think that there is a ground upon which the defendants may successfully resist the claim of liability made against them upon the note. It was sent to the promoters of the company, and thereafter its legal character was an open, continuing proposal to the promoters of a company to be formed, subject to revocation at any time before such company was actually formed or had accepted the proposition; and unless there were some facts appearing to show that the makers of the note were estopped from withdrawing their proposal, as against the state or creditors, they had the right to elect to cancel the note and demand it back.

In Thomp. Corp. § 482, it is said:

"It has been held that, where there is no formal act of acceptance on the part of the corporation when it comes into existence, prior to the bringing of an action, it cannot maintain an action on such a promise made prior to its organization to its promoters in its behalf."

And in Gazette Co. v. Taylor, 30 App. Div. 334, 51 N. Y. Supp. 969, referring to other cases, the learned justice writing the opinion says:

"These decisions recognize that such an agreement is not valid and binding when made, as there is then in existence no party representing the company who is capable of contracting. But when the company is organized, and acts upon the contract by an acceptance of what is regarded as an open continuing proposal, it becomes a valid, binding agreement, to be enforced according to its terms."

Undoubtedly, when such a note is given, and on the faith of it the company secures its right to form the corporation and do business, one who has given a capital-stock note, though he may have received no policy or consideration therefor, and may not have intended to be bound, cannot escape liability; but that is for the reason that the rights of the state and creditors and those dealing with the corporation have intervened, and, as against them, the

maker of the note is estopped from asserting that it was not a valid and binding obligation. The reason usually given for this rule of liability is that to hold otherwise would result in a fraud upon those dealing with the company. Where, however, as here, it appears that a proposal was made, and a note in accordance was given to the promoters of a company, and, long before the incorporation, the maker of the note rescinded the proposal, and sought to get it back, and, as the result of false representations as to its being misplaced or lost, he was unable to obtain its return, it would be a palpable fraud on him to hold that under such circumstances he was liable. The evidence is conclusive that, upon the failure to incorporate the company within a reasonable time, the defendants made every effort, during the 15 months that elapsed before the corporation was actually formed, to rescind their proposal for insurance and get back the note; and it was only because of the statements of the promoters that the note was mislaid or lost, and that the defendants were not members of the company, and were not liable upon the note, that the latter were set at rest, and did not discover that the note was fraudulently delivered to the company when formed, and held as part of its assets. The company, on these facts, cannot recover upon the note, nor do we think that the rights of the receiver or creditors are of so paramount a nature as to prevent the defendants from showing that the note was fraudulently retained and used. The exception taken to the introduction of evidence showing the fraud practiced on these defendants by the promoters of the company in retaining the note for months before the company was formed, and while the defendants were diligently seeking to have it returned, we do not regard as tenable. The rule as to the competency of such evidence is well expressed in Abbott's Trial Evidence, wherein it is said (page 45, § 52), "Where a corporation adopts and acts on the negotiations and inchoate contracts of the promoters who formed it, their acts and declarations, so far as they would have been competent against themselves, are competent against the corporation."

We think that the judgment entered was right, and the judgment and order should be affirmed, with costs. All concur.