Cooper *v.* Shaver.

## COOPER, receiver, &c. *vs.* SHAVER and others.

An assessment made by an insurance company upon its premium notes, which includes the amount of a previous assessment for losses that have been paid, is invalid and cannot be collected.

Premium notes, constituting the capital and being regarded as assets of a mutual insurance company, are ultimately liable for the payment of debts of all classes. It is therefore proper to assess them to pay losses on cash or stock policies issued by the same company.

Where it appeared that several years prior to the appointment of a receiver an insurance company had no funds to pay losses; and the order of reference directed the referee to ascertain the amount of debts &c., and to make an assessment to pay such debts; *Held* that it was a fair and legitimate inference that the cash premiums were exhausted, and that a necessity for resorting to the premium notes existed.

The provision contained in section 13 of chapter 466 of the laws of 1853, requiring notice of an assessment upon premium notes to be published for three weeks, by the secretary of the company, is merely directory, and the publication of such a notice is not a condition precedent to a recovery of an assessment by a receiver of the company.

After sequestration the corporate powers of an insurance company are suspended, and there is no such officer to perform that duty. Hence that provision cannot be literally carried out. *Per* MILLER, J.

Actual notice of the assessment is the main thing. And if demand of the amount be made, by the receiver, before the commencement of a suit therefor, this is sufficient.

After an insurance company is once established according to the provisions of the statute, upon proper evidence, its validity cannot be questioned, or its legal existence denied, by any of its members.

Persons who have given premium notes to a mutual insurance company, and have thus become members of the corporation, are not in a condition to assail the organization of the company.

MOTION for a new trial, upon exceptions ordered to be heard in the first instance at the general term. The action was brought by the plaintiff, as receiver of the People's Insurance Company, to recover of the defendants the sum of $227.80, being the amount of an assessment upon a premium note made by the defendants for the sum of $800, on the 24th of March, 1853. The complaint alleged the incorporation of the People's Insurance Company, the making of the note, and the issuing of the policy to the defendants in the usual form. It then proceeds to state that a judgment was obtained against the company, an execution issued thereon and returned unsatisfied, and that proceedings were had by which the supreme court appointed a receiver of the stock, property &c. of the company. That afterwards, upon the petition of the receiver, setting forth among other things that there were claims in the sum of about $25,000 due from the company to different persons, and praying for an order authorizing the receiver to make such assessments as might be necessary to pay the debts of such company, and to appoint a referee to ascertain the amount of the indebtedness and to assist the receiver in making the assessment, a referee was appointed, and an assessment was made upon the premium notes, and the referee reported to the court and found the amount of debts to be $41,241.09. The report was concurred in by the receiver and confirmed by the court. The amount assessed against the defendants was demanded and they refused to pay it, and the plaintiff claimed to recover the same, with interest. The defendants interposed several defenses to the plaintiff's complaint, which it is not material to state particularly.

It appeared on the trial that the company was duly organized under the act of 1849; that it was unable to meet the losses it had sustained; that its effects were sequestrated and went into the hands of the plaintiff as receiver. That an order of reference was made, to ascertain the amount of debts and make an assessment and report the same to the court.

The referee ascertained and reported the debts and expenses and an assessment, which was duly confirmed by the court. The defendants were assessed $227.80 on their note of $800, which assessment was duly demanded and payment refused.

A number of questions were raised on the trial, which appear in the opinion. The cause was tried at the Ulster circuit, before Justice GOULD and a jury, in May, 1861, and a verdict rendered in favor of the plaintiff for the amount of the assessment and interest.

*J. Grant,* for the defendants, (appellants.)

*E. Cooke,* for the plaintiff, (respondent.)

*By the Court,* MILLER, J. The validity of the assessment is attacked on various grounds, which I shall proceed to consider, so far as it may be important in arriving at a proper disposition of the case. (1.) It is said that the losses are not alleged in the complaint, or proved; and that both of these are requisite to authorize a recovery. There was no objection made to the evidence introduced in regard to the losses, and even if the complaint was not strictly sufficient to admit of evidence upon that point, yet such testimony having been given, it must be considered as in the case. The complaint, however, does allege that the petition set forth the amount due from the company, and the referee reported the amount of debts due. As to the evidence on that subject, Hathaway, the referee who made the assessment, swears to the amount of the losses. He had ample opportunity to know, and it was his especial business and duty to ascertain the amount, and I think the losses are sufficiently established. (2.) That the assessment is for a much larger amount than the debts and liabilities of the company, and for a large amount of *debts already paid.* This objection embraces two propositions. First. That the assessment was for more than the debts. Second. That it embraced debts already paid. Hath-

away, the referee, swears that the assessment was for judgments amounting to $25,125.25, and losses not in judgment and expenses, $15,968; thus making the whole amount of the assessment over $41,000. Although he states that a portion, he thinks one third, of these losses for which the assessment was made had been paid before the assessment was made; yet I understand him to explain this in his last examination upon that point, by stating that many of the liabilities have been paid by borrowing money, which was to be repaid. If there was nothing more in his evidence, it would bear the interpretation that the moneys had been merely advanced, and so the witness testifies in a portion of his evidence. But the difficulty is, that he also says when first sworn, that some of the losses and expenses in this assessment were *paid from a previous assessment.* And when afterwards recalled, he testifies expressly that *the assessment in question included losses that had been paid by a previous assessment.* Without reference to the other testimony as to the amount of losses, it would appear that the assessment in question embraced losses which had before then been paid. The point was distinctly taken on the motion for a nonsuit, and the defendants' counsel requested the court to submit the cause to the jury upon the question as to whether other amounts than the debts, liabilities and expenses of the company, were included in the assessment, and upon the question whether there were losses, liabilities and expenses of the company equal to the amount of the assessment.

If the assessment included the amount of previous assessments for losses which had been paid, then it was invalid, and the plaintiff could not recover. (*Herkimer Ins. Co.* v. *Fuller,* 14 *Barb.* 373. *Shaughnessy* v. *The Rensselaer Co. Ins. Co.,* 21 *id.* 605. *Bangs* v. *Gray,* 2 *Kernan,* 477.)

I have examined with some care, for the purpose of ascertaining whether this difficulty could not be obviated; but it strikes me that it was an insuperable barrier to a recovery on

Cooper *v*. Shaver.

the trial, and the judge at least should have submitted the case to the jury upon the question.

If the views I have expressed on this point are correct, a new trial must be had by reason of the error of the judge in this particular; but as the same questions now presented may again arise, I will proceed to examine the other objections to the assessment, and some of the other questions raised.

(3.) It is objected further to the assessment, that a large amount of the losses included and made a part of the assessment had been paid by the company, both from cash premiums received by the company, and by a previous assessment. What has already been said as to the first and second objections covers this proposition, and the same remarks will apply.

(4.) That by the terms of the note it can only be assessed in the department to which it belonged, which was that of *special hazards.* The thirteenth section of the charter of the company makes provision for the division of the company and its business into departments or classes, and provides "that the premium notes in one class shall not be assessed for the payment of any losses except in the class to which they belong." In *Thomas* v. *Achilles,* (16 *Barb.* 491,) it was held that this provision was in contravention of the general act, under which the company was formed, and should be disregarded in making an assessment. A contrary doctrine, however, was held in *White* v. *Coventry,* (29 *Barb.* 305, *Sheldon* v. *Roseboom, Id.* 309, *note, Paige, J.*) and the authorities are conflicting. It is not material, as I consider, in this case, to examine and determine which of these decisions is correct. The notes constitute the capital, and are regarded as assets of the company. (*Laws of* 1853, *p.* 412, § 17.) They were therefore ultimately liable for the payment of debts of all classes, and it was proper to assess the premium notes to pay losses on cash or stock risks. (*Mygatt* v *N. Y. Protection Ins. Co.,* 21 *N. Y. Rep.* 52. *White* v. *Havens, Court of Appeals,* 20 *How. Pr. Rep.* 177.) The cash being ex-

hausted, the premium notes must bear the burden. (*Laws of* 1853, *p.* 909, § 13.) I think in the absence of proof it may fairly be inferred that the cash premiums had been exhausted. One of the witnesses swears that as far back as 1853, there were no funds to pay losses. The order of reference directed the referee to ascertain the amount of debts, &c. and to make an assessment to pay these debts. From the order and the facts disclosed it is a fair and legitimate inference that the cash premiums were exhausted, and that a necessity existed to resort to the premium notes.

The foregoing observations dispose of all the objections made to the validity of the assessment, and I shall proceed to examine such other points presented and urged as grounds of error by the defendants' counsel, as may be regarded as material.

It is said that there was no notice of the assessment published for three weeks, as required by section eleven of the by-laws of the company, and by section 13 of chapter 466 of the laws of 1853. The notice referred to is required to be published by the secretary. After sequestration the corporate powers of the company are suspended, and there is no such officer to perform this duty. Hence this provision cannot be literally carried out. When the company goes into liquidation the notes must be applied to the payment of the debts, and it only remains to enforce their payment according to their conditions, so far as is practicable in the altered aspect of affairs. Actual notice of the assessment is the main thing, before bringing a suit; and as the statute does not require the receiver to publish a notice, it cannot be indispensable to a recovery. The object, doubtless, was to give information to the persons assessed of the assessment. The provision, at most, is directory, and I do not understand that it is a condition precedent to a recovery by a receiver, of an assessment. The statute (*Laws of* 1853, *p.* 910, § 13) provides as a penalty for a refusal to pay within the thirty days, that the directors may sue for and recover the whole amount of the

note, with costs. In the case at bar a demand was made, which I think was sufficient, before the commencement of the suit.

It is further objected that the Delamater judgment was void, by reason of there being no proof that the person to whom the summons was delivered was a managing agent of the company, and that the court erred in allowing an amendment. I do not think that the alleged defect was a jurisdictional one, so as to affect the validity of the judgment. It was, at most, an irregularity, which could be amended at any time, *nunc pro tunc.* (*Farmers' Loan and Trust Co.* v. *Dickson*, 17 *How. Pr. Rep.* 478. *Wight* v. *Alden*, 3 *id.* 213.)

I think there was no question of fraud to submit to the jury in the case; nor any question as to the insolvency of the company. The representations made by the agent were mainly in reference to the solvency of the company; that it was a sound, solvent and reliable institution; and that its capital was $100,000. I discover no evidence to show that they were incorrect or untrue; certainly none that the officers of the company at the time knew that it was insolvent.

There was sufficient evidence to show the loss of the note, and parol proof of its contents was properly received. It may be proper to observe that the referee's report was not admitted by the court to prove losses, but it was received to show the assessment. Nor was any claim made by the defendants, upon the trial, that they were entitled to a verdict for the counter-claim set forth in the answer. The attention of the court and the opposite counsel was not directed to any such defense. Perhaps if it had been, it might have been waived or obviated in some manner.

The several offers to prove that the company had not at any time capital to the amount of $100,000, and that the company surrendered to the makers, and the makers drew out, a large portion of the stock notes on which the company was formed, without any payment, related to the organization of the company, and affected the existence of the corporation.

It cannot be thus impeached. After it is once established according to the provisions of the statute, upon proper evidence, its validity cannot be questioned, or its legal existence denied by any of its members. (*Laws of* 1849, *p.* 446, § 11.) The corporation is responsible to the government, and until forfeiture may continue to exercise its legitimate functions. (*Hurlburt* v. *Carter*, 21 *Barb.* 224.) It cannot be attacked collaterally, and judicial proceedings must be resorted to and judgment of ouster had, to effect a dissolution. (*People* v. *The President, &c. of Manhattan Co.*, 9 *Wend.* 351. *Angell & Ames on Corporations*, § 777.) Added to this the defendants were members of the corporation. (*Laws of* 1853, *p.* 909, § 13.) And as such not in a condition to assail an organization which had existed for a number of years. The defendants could not thus be discharged from their liability and the persons insured deprived of the very means intended and provided, for the payment of accruing losses. I think, therefore, that the evidence was improper.

I have discussed the most material questions raised by the defendants' counsel upon the trial, and examined with some care the other points presented. I am satisfied that no error was committed by the judge in his decisions, with the single exception to which I have before referred, and for that error a new trial must be granted, with costs to abide the event.

[ALBANY GENERAL TERM, December 1, 1862. *Hogeboom, Peckham* and *Miller*, Justices.]