WILLIAM G. SANDS, Receiver, etc., Respondent, v. EDWARD C. GRAVES, impleaded, etc., Appellant.

Where the by-laws of a mutual insurance company, organized under the act of 1849 (chap. 308, Laws of 1849), provided that notice of assessments upon premium notes should be given by publication in three newspapers published in the county where the company was organized and doing business, *held*, that to maintain an action to recover the assessment, it was incumbent upon the plaintiff to show that it was so published, or, at least, that plaintiff could not comply, for the reason that there was not that number of papers published in the county; proof of publication in two papers is not sufficient, nor does it throw upon defendant the burden of showing that there is another.

*It seems*, that the provision of the act of 1853 (§ 13, chap. 466, Laws of 1853), requiring the directors of such company upon making such assessment to publish the same in such manner as they shall see fit, or as the by-laws of the company shall prescribe, is not merely directory, and personal notice to a party assessed is not equivalent to, nor does it dispense with publication.

*Cooper* v. *Shaver* (41 Barb., 151) questioned.

To make a valid assessment under said act, binding upon the maker of a premium note, it must be based upon an examination and determination of the amount of losses and expense to which the note is liable to contribute, and of the whole amount of notes liable to assessment therefor. While a reasonable discretion may be exercised in determining the facts, the facts must be inquired into and determined by the officers making the assessment.

A formal assessment to the entire amount of a note without any inquiry or determination as to the amount of losses and of notes liable to be assessed therefor is void, and the omission cannot be supplied by proof, upon the trial of an action upon the note, that such an assessment would have been proper.

If policies have been issued upon cash premiums solely and out of the receipts therefor losses have been paid, they are to be taken into consideration and allowance made therefor in making an assessment upon premium notes.

(Argued June 4, 1874; decided June 16, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, affirming a judgment in favor of plaintiff, entered upon the report of a referee. (Reported below, 1 T. & C., 13.)

This action was brought upon a promissory note for $700, given by the firm of F. L. Sheldon & Co., of which firm defendants were the members, upon effecting an insurance with the Ætna Insurance Company of Utica. The policy was issued November 29, 1851, and ran for one year.

The following facts were substantially found by the referee: That said company was incorporated in 1851, under the act of 1849. (Chap. 308, Laws of 1849.) In January, 1854, it became insolvent, and Edward Eames was appointed receiver of its property and effects. On the 19th of March, 1855, he made an assessment upon said note of $358.96. Notice of said assessment by said Eames, specifying the day of payment of the sums assessed, May 17th, 1855, was published in two newspapers printed in the county of Oneida and in none other. Among the by-laws adopted by the company was the following:

" Section 12. The directors may make such assessment upon the premium notes as they may think necessary; notice of such assessment shall be given by the secretary, by publication in three newspapers printed in Oneida county, three weeks successively, the last publication of which shall not be less than thirty days prior to the time fixed for their payment; and in such other newspapers as the directors or executive committee may deem necessary or expedient. The directors or executive committee may also cause such notice to be published in hand-bills, posted up in such places as they may direct."

That there was no personal demand of the defendants on either of them for the payment of the said assessment.

Eames resigned his receivership May 9th, 1860, and plaintiff was subsequently appointed as such receiver. On the 23d day of June, 1860, he made, in form, an assessment by which he assessed each and all the notes which had belonged to said company, and which had come into his possession or under his control, including the defendants', to the entire amount unpaid on each, for the purpose of paying the claims against said company.

The amount of liabilities and losses which said company had incurred or sustained during the year ending on the 29th day of November, A. D. 1852, or during the life of the policy for which said defendants' said note was given, for which said company was responsible, and for the payment of which said plaintiff's said assessment was in part made, was $8,842.30. Of the notes so assessed $87,319.72 were for notes upon which the policies issued were in life on the 29th day of November, 1852.

Prior to the application of defendants for the insurance for which said note was given, said company, as authorized by its charter, had divided applications for insurance into three classes, according to the degree of hazard, called the hazardous, merchants', and farmers' classes, respectively.

The referee, at the settlement of the case, made the following, among other additional findings: That said plaintiff, as such receiver, did not, prior to making his said assessment, ascertain the amount of losses by persons insured, arising between November 29th, 1851, and November 29th, 1852. That said plaintiff, as such receiver, did not, prior to making his said assessment, ascertain or make any efforts to ascertain the amount of notes liable to be assessed for losses occurring during the year ending November 29, 1852. That prior to the making of his said assessment, the plaintiff had not examined or ascertained what particular notes were liable to be assessed for losses occurring during the life of defendants' policy. It was not shown, by evidence upon

the trial, that any of the losses occurring during the life of defendants' policy were in the hazardous class of applications, risks, or policies in said company, or taken or issued by said company.

As conclusion of law, the referee found that plaintiff was entitled to judgment for the full amount of the note. Judgment was entered accordingly.

*W. Porter* for the appellant. It was error for the referee to admit evidence as to uncollectibility of the notes assessed by plaintiff, to justify his assessment of defendants' note to its full amount. (*Bangs* v. *Gray*, 12 N. Y., 485 ; *Brown* v. *Williams*, 28 Me., 252.) The failure to publish the notice of assessment as required by the twelfth by-law of the company was fatal. (*Bodle* v. *Chen. M. Ins. Co.*, 2 Cow., 59 ; *Walker* v. *Whitehead*, 16 Wend., 314; *Olcott* v. *Suprs.*, id., 336 ; *Sands* v. *Sanders*, 26 N. Y. ; *Sands* v. *Lilienthall*, 46 id., 541.) The provisions of section 13, chapter 466, Laws of 1853, as to the publication of notice, were not intended to interfere with the by-laws of the company, or any rights secured to the members thereby. (*Sands* v. *Sanders*, 26 N. Y., 239 ; *Sands* v. *Lilienthall*, 36 id., 541 ; *Norris* v. *Beyea*, 13 id., 283; *Sweet* v. *Chase*, 2 id., 73.) A statute will not be construed so as to change materially the common law or a previous statute, by implication. (*Williams* v. *Potter*, 2 Barb.; 316 ; *Bowen* v. *Lease*, 5 Hill, 221 ; *Wright* v. *Briggs*, 2 id., 77 ; *Beaty* v. *Knowler*, 4 Pet., 152 ; *Sands* v. *Shoemaker*, 2 Keyes, 271.)

*Henry R. Mygatt* for the respondent. Plaintiff's assessment is valid. (*Sands* v. *Sanders*, 26 N. Y., 245 ; *Sands* v. *Kimbark*, 27 id., 154 ; *People's Mut. Ins. Co.* v. *Allen*, 10 Gray, 297 ; *Sands* v. *Shoemaker*, 2 Keyes, 268 ; *Jones* v. *Scisson*, 6 Gray, 296 ; *Fayette Mut. L. Ins. Co.* v. *Fuller*, 8 Al., 33 ; *People's Eq. Mut. F. Ins. Co.* v. *Babbitt*, 7 id., 237 ; *Hubbard* v. *Eames*, 39 N. Y., 273.) Interest is recoverable from the time the assessment was due and payable. (*Hyatt*,

*Recr.*, etc., v. *Wait*, 37 Barb., 43 ; *Jackson, Recr.*, etc., v. *Roberts*, 30 N. Y., 304, 306.)

GROVER, J. When this case was heard and determined by the Commission of Appeals, no attempt was made to sustain the judgment which had been recovered by the plaintiff upon the assessment made by Eames, the predecessor of the plaintiff in the receivership. It is now insisted by the counsel for the respondent that the present judgment should be upheld upon that ground irrespective of the validity of the assessment made by the plaintiff. An answer to this position is, that the judgment is for the entire face of the note, while the assessment made by Eames was for only fifty per cent thereof, and there was no proof that any personal demand had been made of the makers for the payment of this assessment. This is a condition precedent to the right to recover the entire note for a neglect to pay an assessment for a part thereof. The counsel for the respondent claims that such demand was proved. The counsel was, doubtless, led into this mistake from an impression that the proof given of a personal demand of the assessment made by the plaintiff referred to the assessment made by Eames. This want of a personal demand of payment of the latter assessment precludes a recovery of the entire note for its non-payment ; but as in its absence a recovery in the action may be had for the amount of the assessment (*Sands* v. *Lilienthall*, 46 N. Y., 541), and as it is in the power of this court to reduce the judgment to such amount, it is proper to determine whether such notice of this assessment was given as was necessary to sustain an action for its recovery. The twelfth by-law of the company provides that notice of assessment shall be given by the secretary, by publication in three newspapers printed in Oneida county, three weeks successively, the last publication of which shall not be less than thirty days prior to the time fixed for payment. The case shows that such notice was only published in two such newspapers. The counsel for the respondent insists that it was not shown · that any more than two papers were at the time

published in that county, and for this reason the publication was sufficient. The answer to this is: 1st. There was testimony given show'ng that three papers were published. 2d. If, in case there was not, its publication in a less number would be a substantial compliance with the by-law, the onus was upon the plaintiff to show that he could not fully comply, for the reason that the requisite number of papers was not published in the county. In *Sands* v. *Sanders* (26 N. Y., 239) this court was equally divided upon the question, whether a recovery could be had upon this assessment in the absence of publication as required by the by-law. I concur with those holding that it could not, for the reasons given in the opinion of EMOTT, J.

*Cooper* v. *Shaver* (41 Barb., 151) is cited as showing that the provision contained in section 13, chapter 466, Laws of 1853, is merely directory, and that if the party prosecuted has had personal notice of the assessment, it is sufficient. This, if correct, has no application to the facts of this case, for the reason that it does not appear that the defendant had personal notice of the assessment made by Eames. But I can hardly think the position sound, for each one assessed has a direct interest in having the assessment made valid as to all liable thereto. As an illustration, take the present case. The assessment would, if fully collected, pay more than enough to satisfy all the losses and expenses chargeable upon the notes in life from November 29, 1851, to November 29, 1852 (the period the defendants' note was liable for), in which event, the parties paying would be entitled to a refund for his portion of the excess paid. Hence each has an interest in having the notice so published as to make the assessment collectible against all. No attempt was made to show any modification of the mode of publishing the notice, under the provisions of the act of 1853, by the directors. Hence the question whether they could so modify does not arise in the case. My conclusion is, that no recovery can be had, based upon the assessment made by Eames.

The question whether the assessment made by the plaintiff

was valid must be determined. It was held by the Commis-
sion of Appeals that the assessment to the entire amount of
the note was invalid, for the reason that all the losses of the
company, sustained between November 29th, 1851, and the
29th of November, 1852, to which and the incidental expenses
the defendants' note was liable to contribute, amounted only
to about the sum of $10,000, while the notes liable to assess-
ment therefor amounted to between $80,000 and $90,000,
and that no recovery based upon this assessment could be had.
Upon this ground the judgment was reversed and a new
trial ordered. Without determining whether this was correct
it must be adopted as the law of this case, having been deter-
mined by a co-ordinate branch of the court of last resort, and
a new trial directed in accordance therewith. The inquiry
therefore is, whether, assuming this to be the law, the
plaintiff was entitled to recover. It will be seen that the
question is, whether the amount of losses was such a propor-
tion of the amount assessed for their payment as to show a
reasonable exercise of discretion by the receiver, or whether
the latter was so greatly in excess as to show such an abuse
as to render his action void. Various cases are cited by the
counsel for the respondent in this and the Supreme Court,
where it has been held that this assessment by the plaintiff
was valid, but in no one of them were the facts like those
in the present case. But little, if any, assistance can be
derived therefrom in determining the questions in this case.
The referee in his report finds that all the facts stated in the
complaint are true, but in settling the case he found a large
number of additional facts, and it is well settled that the
latter must control in the decision of the case. By the
seventh additional finding the referee finds that the plaintiff
as such receiver, on the 23d day of June, 1860, made a formal
assessment by which he assessed each and all the notes which
belonged to said company and which had come into his pos-
session and control as such receiver to the entire amount
unpaid on each, for the purpose of paying the claims against the
company, etc. By the forty-fifth additional finding he finds

that the plaintiff as such receiver did not, prior to making his said assessment, ascertain the amount of losses by persons insured between November 29, 1851, and November 29, 1852. It must be kept in mind that this was the only period during which the defendants' note was liable to assessment for the payment of losses. By the forty-sixth he finds that the plaintiff did not, prior to making his said assessment, ascertain, or make any efforts to ascertain, the amount of notes liable to be assessed for losses occurring during the year ending November 29, 1852. By the forty-seventh he finds that, prior to the making of his said assessment, the plaintiff had not examined or ascertained what particular notes were liable to be assessed for losses during the life of defendant's policy. These findings show that no legal assessment was ever made by the plaintiff upon the note in suit. Before the defendant could be called on to pay, his note must be assessed either by the directors or receiver. To make such assessment there must be an examination and determination of the amount of the losses and expenses to which the note is liable to contribute, and of the whole amount of notes liable to assessment therefor, and the assessment must be based upon such examination and determination. In executing this duty, as I understand the rule adopted by the Commission of Appeals, a reasonable discretion may be exercised in determining the facts, but the facts must be inquired into and determined by those making the assessment. Were it otherwise the assessment would be a mere form, furnishing no safe guide whatever to those required to pay. If a formal assessment of the notes, or any part of them, may be made to the entire amount, without any inquiry or determination of the amount of losses for which they are liable, or of the amount of the notes liable to be assessed therefor, it is obvious that the makers are deprived of all benefit designed to be secured by this mode of determining the amount they are respectively liable to pay. The omission of the assessment, as required by the contract, cannot be supplied by proof on the trial showing that the making of the assessment would have been proper.

In the present case, upon trial some evidence was given tending to show that a considerable portion of the notes liable to be assessed for losses during the time the defendants' note was so liable were, in fact, not collectible for the reason that the makers were insolvent. Much of this evidence was hearsay and incompetent. Some of it consisted of the return of executions upon judgments recovered upon the notes assessed. But the inquiry as to the solvency of the makers should have been made by the plaintiff before making the assessment; and, from the facts so ascertained, he should have determined the amount that was not collectible, and fixed the rate of assessment in accordance therewith. This the findings show he did not do. The additional findings, from the thirty-first to the thirty-ninth inclusive, show that but a small percentage of the notes liable for the losses happening during the period for which the defendants' note was liable, were in fact uncollectible at the time the plaintiff made the assessment. But the vital point is, that no such inquiry was made by the plaintiff, or determination of that question by him, upon which he based his assessment.

The thirtieth additional finding shows that, at the time of the assessment, none of the notes liable were barred by the statute of limitations. This disposes of that question irrespective of the duty of the plaintiff to inquire into and determine that question before making the assessment. This, it was obvious, was necessary to ascertain the whole amount of notes liable to assessment.

It was further sought to uphold the assessment by proof given upon the trial that the company paid during the year that defendants' note was liable some $75,000 for losses. When these losses accrued was not shown, or how the company obtained the funds with which they were paid. From some evidence in the case showing that the company entered into contracts largely for insurance where the entire premiums were paid in cash, without any note of the insured being given, it is probable that the funds

were derived from this source.   If so, the defendant was enti-
tled to a just proportion thereof, determinable by the term
of the risk, to relieve his note from assessment.    If the
defendants' note was at all liable to assessment for any part
of such funds, this should have been inquired into and deter-
mined by the plaintiff in making the assessment.

The judgment appealed from must be reversed; and as it
is possible, notwithstanding the testimony upon the trial and
the findings of the referee, that the plaintiff may be able to
prove upon another trial that a valid assessment was made by
the plaintiff a new trial must be ordered, costs to abide
event.

All concur.

Judgment reversed.