RAEGENER v. WILLARD.

(Supreme Court, Appellate Division, First Department. October 20, 1899.)

1. MUTUAL FIRE INSURANCE—ASSESSMENTS—RECEIVERS.

Laws 1892, c. 690, § 111, provides that mutual fire insurance corporations may be organized, and commence business, when a certain number of applicants for insurance therein have paid in cash a certain portion of their premiums, and have deposited with the company capital stock notes of solvent persons for the balance. Section 113 provides for deposit notes for premiums on policies issued after such organization. It also provides that every person effecting insurance in such a corporation shall thereby become one of its members, shall remain such during the period of insurance, and shall be bound for losses and running expenses in proportion to the amount of his deposit note; and that capital stock notes, given at organization, shall remain as security for all losses and claims until the accumulation of profits invested, as required by law, shall equal the amount of cash capital required to be possessed by stock fire insurance companies, the liability of each note decreasing proportionately as the profits accumulate. Section 115 provides that, at the expiration of the term of insurance, such deposit note, or the part thereof which remains unpaid after the company receives thereon a proportionate share for all losses or ex-

penses accruing during the life of the insurance, shall be relinquished to the maker. Section 116 provides that the directors of such a corporation, as often as they deem necessary, may make assessments upon the members thereof, in proportion to the original amount of their respective notes, for the purpose of paying losses by fire or judgments against the corporation, but that no one shall be bound to pay more than the full amount of his note, and that the company may receive cash for the whole amount of premiums on policies in lieu of deposit notes, without subjecting the policy holder to any other or additional liability, or in any way impairing or changing the obligation of the corporation or affecting the rights of any person interested therein. Section 122 requires the cancellation of policies on certain conditions, and provides that a portion of the cash paid on premiums shall be returned on such cancellation. Sections 120 and 121 fix the precise form and requirements of policies, which are made to comply with section 122. A mutual fire insurance company was organized under said laws, the charter limiting its membership to those policy holders who should be makers of capital stock notes. Defendant gave a capital stock note for $400 to complete organization. The company passed into plaintiff's hands as receiver, who estimated the losses, and, to pay the same, made an assessment on all of the notes held by the company, including in such assessment $17,000 for returned premiums on cash policies which had been canceled. Defendant failing to pay his assessment, plaintiff sued for the full amount of the note pursuant to section 116. *Held,* that if the receiver, in making his assessment, having only the same power that the directors would have, fixed the amount at any considerable sum greater than the company's legal liabilities, the assessment could not be recovered.

2. SAME—CASH POLICIES—CANCELED POLICIES—DEPOSIT NOTES.
  Persons holding cash policies so canceled were entitled to receive back from the receiver the proportion of their cash premiums to the same extent as their notes were to be surrendered on the cancellation of policies under section 122, and therefore defendant was liable on his capital stock note, notwithstanding said $17,000 was included in the assessment.

3. SAME—MEMBERS.
  All persons holding insurance in said corporation were members of the same, notwithstanding the charter provision limiting membership to the makers of capital stock notes.

4. SAME—ASSESSMENT—LIABILITY OF MEMBERS.
  The makers of deposit notes were liable only for losses occurring during the term of their insurance.

5. SAME—RECEIVER—ASSESSMENTS.
  The amount of assessment fixed by a receiver of a mutual fire insurance company on notes due it for premiums will be presumed to be a correct sum due by the company, until the contrary is shown.

6. SAME—REINSURANCE—LIABILITIES.
  A claim of a policy holder for premiums expended for reinsurance in other companies that are insolvent is a proper claim against a mutual fire insurance company procuring such reinsurance.

Appeal from trial term, New York county.

Action by Louis C. Raegener, as receiver of the Equitable Mutual Fire Insurance Company of New York, against Alfred E. Willard. From a judgment for plaintiff, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, PATTERSON, and O'BRIEN, JJ.

Albert A. Wray, for appellant.

Alfred A. Cook, for respondent.

RUMSEY, J. The plaintiff is the receiver of the Equitable Mutual Fire Insurance Company of New York. This company, as its name

implies, is a mutual fire insurance company, and was organized under article 3 of the insurance law of the state of New York, being chapter 690 of the Laws of 1892. The defendant gave a capital stock note for $400, in order to complete the organization of the company, and his note was one of those which represented the capital requisite for such organization. After the appointment of the plaintiff as receiver, he estimated the losses of the company and its liabilities, and made an assessment sufficient to cover them. The amount of the assessment upon the defendant's note was $240. This he declined to pay, and the plaintiff brought this action to recover the full amount of the note, pursuant to section 116 of the statute. A recovery was had upon the note, and from the judgment entered upon the decision this appeal was taken.

The defendant raises several questions which have already been decided in this court in actions by the same receiver against other makers of notes for premiums of this corporation. Raegener v. McDougall, 33 App. Div. 231, 53 N. Y. Supp. 484; Raegener v. Hubbard, 57 N. Y. Supp. 1018. These cases declare no new law, but what has been the law of this state for many years. Cooper v. Shaver, 41 Barb. 151. They dispose of all the points but one made against this judgment.

But the defendant raised at.the trial a question as to the validity of the assessment made upon his note, which was not presented in either of the former cases decided in this court. In each of those cases it was taken for granted that the assessment was valid, and the case was decided upon that presumption. But no such concession is made by the defendant here. He insists that in making the assessment the receiver went beyond the power given him by the statute, and therefore the assessment is invalid, and the action cannot be maintained. There is no doubt that the receiver, in making his assessment, has precisely the same power that the directors would have, and no other. This power is not an arbitrary one, nor is it judicial in its nature, but for its validity it depends.upon the existence of facts making the assessment necessary and proper. Thomas v. Whallon, 31 Barb. 172; Insurance Co. v. Fuller, 14 Barb. 375; Cooper v. Shaver, 41 Barb. 151. If, upon the facts shown in an action for the amount of the assessment, it should be made to appear that, in fixing the amount, the directors or receiver have included any considerable sum of money which is not a proper charge against the corporation, the assessment is not valid, and it cannot be recovered. Cases cited supra.

It is not disputed in this case that in fixing the amount of the assessment the receiver included $17,000 for returned premiums allowed to persons who had taken out policies for cash payment and whose policies had been canceled. The defendant claims that persons who had taken out policies for which they paid cash premiums became members of the corporation; that their cash premiums stood in lieu of the liability of the persons who made deposit notes upon other policies; that the amount of premiums so paid should no more be withdrawn from the assets of the company than could the stock notes be taken up and canceled; and therefore the company

was not liable to return unearned premiums upon canceled policies, and for that reason this sum of $17,000 was not the liability of the corporation. The plaintiff, on the contrary, claims that persons who take out policies of insurance for which they pay cash premiums do not become members of the company, but they stand in a purely contractual relation, with the same rights towards the company that the policy holder of any ordinary stock company has; one of which is, when a policy is canceled, to have returned to them the difference between the premium paid and the cost of the canceled policy, at short rates, during the time that it was in force. Which of these two conflicting claims is correct is the question presented.

For a long time it was a disputed question in the courts whether a mutual company created under the laws of this state, whose policies were to be paid for partly in cash and partly by giving deposit notes, could issue paid-up policies for cash premiums. It was decided in the case of Hart v. Achilles, 28 Barb. 576, that policies issued by such a company for cash premiums were void. But this ruling was not adhered to by the court of appeals, and, finally, that court determined that, under the act for the incorporation of mutual insurance companies, it was competent for a mutual company to issue policies for the payment of fixed premiums in cash. Mygatt v. Insurance Co., 21 N. Y. 52; White v. Havens, 20 How. Prac. 177. From that time on it has been the undisputed law of this state that a mutual company might take for a policy either a percentage of the amount of the premium in cash, with a deposit note to secure the remainder of the premium, or a fixed premium in cash for the full amount. The law of 1892, under which this corporation was organized, expressly provided that any mutual corporation might receive from any person applying for insurance, in lieu of a deposit note, the whole amount in cash for the premium therefor, without subjecting such person to any other additional liability or in any way changing or impairing the obligation of the corporation. The court of appeals held that a person taking out a policy of insurance for a cash premium became a member of the corporation to precisely the same extent as though he had paid a part of his premium in cash and given a deposit note for the remainder. Cases cited supra. That rule was also incorporated into this statute by section 113, by which it was prescribed that every person having insurance in any mutual fire insurance corporation, and his heirs, executors, administrators, and assigns, continuing to be so insured, shall thereby become members of the corporation during the period of insurance.

It is quite true that the charter of the Equitable Company limits the membership to those policy holders who are also makers of capital stock notes. But this limitation is inconsistent, not only with the provisions of the statute just quoted, but also with the ruling of the court of appeals in construing previous statutes. Further inquiry in this case must therefore proceed upon the theory that all policy holders alike are members of the company. What liability, then, does one assume when he takes out a policy in a mutual insurance company, and thereby becomes a member of it? As to the makers of capital stock notes, the statute answers the question by

saying that "all capital stock notes * * * shall remain as security for all losses and claims until the accumulation of profits invested as required by law shall equal the amount of cash capital required to be possessed by stock fire insurance companies, the liability of each note decreasing proportionately as the profits are accumulated." Section 113. This portion of the section, however, applies only to capital stock notes, which are those given to complete the organization of the company. The statute provides for another sort of notes, called "deposit notes," which may be given to the corporation by one effecting insurance after the organization of the company. Section 115. The makers of such notes are members of the company, but their liability upon their notes is not precisely like that of the makers of the capital stock notes. The makers of deposit notes are to remain liable only until the expiration of the term of insurance, and at that time the note, or that portion of it which shall remain unpaid after receiving from the maker a proportionate share of the losses or expenses occurring during such term, shall be delivered by the corporation to the maker. Section 115.

So, it will be seen that the makers of deposit notes are liable only for losses, etc., which occur during the term of insurance. Their notes do not constitute capital, as do those given before the organization to complete it, but are part of a fund, to be drawn upon with capital stock notes, to pay losses occurring during the term of the insurance for which each particular deposit note has been given. The liability of the makers of these notes arises from the receipt of a policy. It is strictly contractual, and exists only during the term of insurance.

What is the "term of the insurance"? That depends upon the provisions of the policy. The policy to be issued by every fire insurance company, whether stock or mutual, is prescribed by sections 120 and 121 of the statute, which applies to all companies alike. The policy thus prescribed and issued is subject to all the requirements of the statute. As the precise form is fixed by the law, we may take notice of it. One provision which the law establishes and which the policy contains is that made to comply with section 122, permitting the cancellation of the policy, and that provision is effective to determine what is the term of insurance, which is the time for which the policy has been issued, or the time it is in force, if it has been canceled as provided by its terms. When it expires or when it is canceled, the maker of the deposit note has the right to have his note returned to him upon compliance with the requirements of section 115. It is to be noticed that the liability of the makers of capital stock notes is not affected by this section. The statute prescribes that the cash premium, when paid, is to be received in lieu of a deposit note.

When a policy issued for cash has been canceled, therefore, the policy holder who has paid in cash is entitled to receive back a proportion of his cash premium. Just how that proportion is to be estimated we need not inquire. We have not the data to enable us to determine whether the amounts fixed by the receiver were correct or not, and we must therefore assume that they were properly

adjusted. The rebate upon a canceled cash policy is clearly to be repaid to the same extent as the note is to be surrendered, and the obligation to repay it is clearly a liability of the corporation, to be satisfied by the receiver. In none of the cases upon this subject has the question been presented as to the time of limitation of the liability of the insured, and therefore the general expressions in one or two of the opinions upon that subject are not authoritative.

The other objections to the assessment are not well taken. The claim of Kelvey for $600 was clearly a liability of the company. If the reinsurance procured by him has proved to be worthless, that fact alone affords no reason why he should not be repaid what he expended to obtain it, in the absence of anything showing fraud or neglect on his part. The evidence shows that the reinsurance was obtained in companies which had either gone out of business or had become insolvent. That is not denied. The receiver was not called upon, when he learned that to be the fact, to expend money in procuring judgments against these insolvent corporations, but might rely upon the advice of his counsel that nothing could be collected. The conclusion is that nothing shown by the defendant has cast doubt upon the validity of the assessment, and therefore the judgment must be affirmed, with costs. All concur.

---

WIELAND v. FORGOTSTON et al.

(Supreme Court, Appellate Division, First Department. October 20, 1899.)

USURY—SUFFICIENCY OF COMPLAINT.

    A complaint alleging a usurious loan, a conveyance of real estate to a third person as security, and collusive transfers of the property by the lender, the trustee, and other defendants, without consideration, and with full knowledge, and intent to defraud plaintiffs, and offering to pay whatever was justly due, states a cause of action on equitable grounds, as to all defendants; the conveyances being void under the statute against usury, and a cloud on plaintiffs' title.

Appeal from special term, New York county.

