Samuel J. Silverman, J.
This is a motion to confirm the “ partial ” report of the Referee dated May 24,1972 with respect to deferring certain claims in a liquidation proceeding of a mutual casualty insurance company.
The basic issue on this motion is whether Class II claims by persons who paid premiums on nonassessable policies for a period beyond the date of declaration of insolvency should be treated on a parity with claims for losses insured against, or whether they should be deferred to such claims.
The Superintendent of Insurance as liquidator of the company filed a report which recommended that claims filed by Class II policyholders for return of unearned premiums be suspended, to share if allowable only in the event there should be surplus assets, i.e., over amounts necessary to pay valid loss claims for fire and other casualty losses insured against by policies issued by the company. For different reasons the Referee has recommended that this procedure be followed.
*615 I do not agree with the liquidator and the Referee in their determination and I hold the claims for return of prepaid unearned premiums by Class II claimants shall share pari passu with claims for losses insured against.
It is, of course, a general principle of equity that persons in the same class should be treated alike, i.e., equally or proportionately. Prima facie, both a claim for return of prepaid unearned premium and a claim on a policy for losses insured against would seem to be general creditors’ claims and normally all general creditors’ claims share pari passu on a liquidation.
I see no decisive consideration the other way here.
There appears to be no controlling case law or .authority in New York on the precise point here involved.
Certain related points do seem to be settled with respect to insolvent mutual casualty insurance companies: (1) Claims for return of prepaid unearned premiums are a valid liability of the company, entitled to share in some order in the common fund created by premiums paid or obligated for by all the policyholders, “ members ” of the mutual insurance company. (Raegener v. Willard, 44 App. Div. 41 [1st Dept., 1899]; Regener v. Phillips, 26 Misc. 311, 313 [1899].) (2) A policyholder’s claim for losses insured against cannot be offset against his liability for premiums contracted to be paid. (Lawrence v. Nelson, 21 N. Y. 158 [1860]; cf. Insurance Law, § .538, subd. 2, par. [c].)
The problem arises presumably from the special nature of a mutual insurance company. In a mutual insurance company, all policyholders have a double capacity — they are both insureds and insurers or, more broadly, both debtors and creditors. The premiums paid by the policyholders constitute the fund for the payment of all the creditors, of whom the greatest number are usually the policyholders themselves. (Lawrence v. Nelson, 21 N. Y. 158, 160; Mygatt v. New York Protection Ins. Co., 21 N. Y. 52, 68 [1860].)
A major premise of the argument against permitting claims for unearned premiums to share on a parity with claims for insured losses in the case of insolvent mutual casualty insurance companies is that in mutual companies the premiums paid or payable are the sole guarantee — the common fund as it is called — for the payment of loss claims. (Of course, even in stock companies, the basic fund for the payment of losses is also premiums; but in stock companies this fund is at least supplemented as a guarantee fund by the capital stock.)
It is by no means obvious to me that this difference fairly calls for so drastic a difference in the treatment of claims for *616 unearned premiums as between mutual and stock companies, particularly when we deal with nonassessable policies.
However, I think that in New York, by statute, even the major premise fails, for the clear implication of section 345 of the Insurance Law is that the common fund for the payment of claims is only the earned premiums (or assessments proportionate to the earned premiums). The statute provides (Insurance Law, § 345): “1. Except as provided in section fifty-eight [nonassessable policies], every domestic mutual fire insurance company shall in its by-laws and policies prescribe the contingent mutual liability of its members for the payment of assessments, in such a way that each member shall be liable to pay his proportionate share, subjéct to the limitations hereinafter specified, of the amount of any assessment or assessments necessary to make good an impairment of the minimum surplus of such company. #**2***A member’s proportionate-part of any assessment shall be determined by applying to the premium earned on the member’s policy or policies in force during a period of one year next preceding the order of assessment the ratio of the total assessment to the total premiums earned during such period on all policies subject to assessment.” (Italics mine.)
The statute thus makes the obligation of the members for the payment of liabilities proportionate not to the entire premium paid or contracted for, but to the earned portion of the premium.
If, however, as the liquidator and the Referee have suggested, the claims for refund of prepaid unearned premiums are deferred to claims for losses, the contribution of policyholders who have claims for unearned premiums is disproportionately greater than the contribution of other policyholders, perhaps including those who have loss claims.
The earlier formulation of the statute, though I think not different in substance, makes even clearer that it is only earned premiums, not unearned premiums, that constitute the common fund to guarantee the company’s other liabilities. Thus subdivision 10 of section 111 of the former Insurance Law, prior to 1940, provided: “If the corporation is not possessed of cash funds above its unearned premiums or premium deposits sufficient for the payment of the incurred losses and expenses, the board of directors shall make an assessment * * * for the amount needed to pay such losses and expenses upon the members, in proportion to their several liability.” (Italics mine.) (L. 1921, ch. 237, § 3.)
*617 Furthermore the statute oro vides (Insurance Law. § 345, subd. 2): “ 2. If any domestic mutual fire insurance company * * * is at any time not possessed of admitted assets at least equal in amount to the aggregate of its liabilities, its reserves and its minimum surolus as required by the provisions of this chapter, and if such impairment is not otherwise made good, the board of directors of such company may * * * order an assessment * * * for an amount which will provide sufficient funds to make good such impairment ”.
Thus the claims guaranteed by assessments against the policyholders are not merely loss claims but “ the aggregate of its liabilities, its reserves and its minimum surplus Among the reserves that a mutual insurance company must have is an “ unearned premium reserve”. (Insurance Law, § 58, subd. 1, par. [a].) Thus the claims guaranteed by the other policyholders in the same phrase as casualty losses include the unearned premium claims both as liability and as reserves. And the precise holding of the Raegener [Regener] eases (44 App. Div. 41 and 26 Misc. 311, supra) is that among the liabilities for which assessments may be levied are claims of cash premium policyholders for return of unearned premiums. To defer unearned premium claims to matured casualty losses would again be to give a preference unwarranted by the statute for casualty losses over unearned premium liabilities.
It is true that the Class II claimants are all holders of non-assessable policies. But nonassessable policyholders surely should be even more closely assimilated to policyholders of stock companies than holders of assessable policies; and section 345 at least indicates the general policy and scheme of the statute. It appears particularly unfair to apply the Superintendent’s suggested rationale to Class II claimants. As holders of non-assessable policies, they did not, legally, morally or in anybody’s understanding, guarantee to make good to other policyholders the payment of losses insured against. In essence they simply bought insurance as they might have done from a stock company. For them the fact that the company was a mutual one meant only that (a) the company had no capital stock to serve as an additional guarantee of the policies and (b) if the company made a profit, they might receive a “ dividend” in the form of a return of premium. But these characteristics applied equally to the policyholders who had sustained losses of the kind insured against. And thus I see no sufficient reason to prefer one loss over the other.
*618 The result I have suggested is not inconsistent with the mutual nature of the company and the double nature of the policyholder’s relationship to the company and to the other policyholders. I think it merely treats proportionately the policyholders ’ valid creditors’ claims of any kind and their legal liability.
The difference between a stock company and a mutual insurancé company in this context is expressed not in the deferring of one type of valid claim to another, but in the rule that in an insolvent mutual insurance company, the claim for losses cannot be offset against the obligation for unpaid premiums, precisely because to allow such an offset would prefer one type of claimant to another. (Lawrence v. Nelson, 21 N. Y. 158, 161, 163, supra.) It is not inconsistent with the mutual nature of such companies to allow claims for unearned premiums to share ratably with other creditors. (Cf. Lawrence v. Nelson, supra, p. 163.)
The Referee felt that although New York law an the point was not settled, as a matter of fairness it was better to pay the individually large, more painful loss claims in full before paying anything on the individually smaller, less painful, unearned premium claims. I am afraid that this is unjust to the smaller claims. The claims of Class II policyholders for return of unearned premiums aggregate $2,646,517, exclusive of over 10,000 claims in unstated amounts. Apparently (though this is not perfectly clear to me) this aggregate amount is several times the total matured loss claims though only a fraction of the total liabilities. I think that the principle of proportionality sufficiently recognizes the larger, more painful nature of the matured loss claims, for dividends will be proportionate to the amount of each valid claim.
Authorities from other jurisdictions are in some conflict. A New Jersey case reaches the same result as I have reached — Tuttle v. State Mut. Liab. Ins. Co. (2 N. J. Misc. 973).
Perhaps the leading case the other way is Commonwealth v. Massachusetts Mut. Fire Ins. Co. (112 Mass. 116 [1893]) relied upon by a number of other cases from other jurisdictions. But there are two basic differences between this Massachusetts case (and cases relying upon it) and the New York situation: (a) The statute involved in the Massachusetts case made assessments proportional to premium and deposit and not to the relationship between the expired-and unexpired term of the policy (pp. 122, 124). The New York statute, section 345, expressly adopts the opposite rule making liabilities for assessment proportional to the unexpired term, (b) Assessments under the Massachusetts statute were only to cover claims for losses (pp. 122, 124, 126). *619 The New York law requires that the assessments shall cover the liability of the company for unearned premiums.
Some authorities in other States have drawn a distinction between policies canceled before insolvency or receivership and those canceled thereafter, allowing the claim for unearned premiums as to the former and disallowing it as to the latter. I do not think such a distinction should be made in the case at bar for these reasons: (a) The particular provisions of our
statute to which I have referred, (b) I see no basis in fairness or law for distinguishing between these two classes of general creditors, neither of whom has a legal lien or preference over other general creditors. (Cf. People v. Security Life Ins. & Annuity Co., 78 N. Y. 114, 128 [1879].) (c) The two Baegener [Begener] cases (44 App. Div. 41 and 26 Misc, 311, 313-314, supra) both involved assessments, to repay unearned premiums without distinction as to whether the policies were canceled before or after receivership.
I would add that I suppose the determination of the amount of the unearned portion of premiums of Class II policyholders should not present any seriously contested issue. Nor do I now pass on the question of whether some de minimis rule might be applied where claims are so small that the dividend on them would not be worth the trouble to either the liquidator or to the policyholder of notices, calculation, etc.
The Referee’s findings of fact are confirmed. His conclusions of law are modified so as to provide that claims for unearned premiums of Class II policyholders shall share pari passu with other general creditors ’ claims including claims on matured casualty losses, and conclusions of law 1 and 2 are reversed.