In the Matter of the Liquidation of MIDLAND INSURANCE COMPANY.

KEMPER REINSURANCE COMPANY, Appellant, v JAMES P. CORCORAN, as Superintendent of Insurance of the State of New York, Respondent.

First Department, May 14, 1991

## APPEARANCES OF COUNSEL

*David M. Spector* of counsel *(Robert C. Bata, Thomas S. Kiriakos* and *Ira J. Belcove* with him on the brief; *Mayer, Brown & Platt,* attorneys), for appellant.

*Harold A. Kurland* of counsel *(Robert B. Calihan* and *Judy A. Toyer* with him on the brief; *Nixon, Hargrave, Devans & Doyle,* attorneys), for respondent.

*Reid L. Ashinoff* of counsel *(Martin J. Foley, Phillip E. Stano, Robert L. Sarber, Craig A. Berrington, Richard E. Goodman* and *John J. Nangle* with him on the brief; *Sonnen-*

*schein, Nath & Rosenthal,* attorneys), for American Council of Life Insurance and others, *amici curiae.*

OPINION OF THE COURT

Asch, J.

In 1979, Midland and two of its affiliates, entered into a first casualty excess of loss cover reinsurance treaty with Kemper. The "treaty" refers to the reinsurance of the risk by Kemper on a particular line of reinsurance relating to casualty risks. In return for Kemper's assumption of excess risk, Midland and its affiliates agreed to pay it premiums. Thereafter, in 1984, Midland issued an excess products integrity impairment and products recall insurance policy to Esmark, Inc./International Playtex, Inc. and in a facultative reinsurance certificate, Kemper agreed to reinsure 75% of the risk. Facultative reinsurance is reinsurance of either a portion or the entire risk on a particular policy as opposed to a "line". This Playtex contract between the two insurers provided with respect to insolvency: "In the event of the insolvency of [Midland], reinsurance under this Agreement shall be payable by [Kemper] on the basis of the liability of [Midland] under the Reinsurance Agreement without diminution because of such insolvency, directly to [Midland] or its liquidator, receiver or statutory successor, except as otherwise specified in the statutes of any state having jurisdiction of the insolvency proceedings."

In 1985, Midland paid over $1 million in resolution of a claim arising from a product recall asserted under the Playtex policy and requested that Kemper pay 75%. On April 3, 1986, a liquidation order was entered adjudging Midland to be insolvent and Kemper brought this action in 1988 for a declaration that it was entitled to offset treaty premiums due to it from the period 1979 to 1982 against the amount it concededly owes Midland on the Playtex contract. The Supreme Court denied Kemper's motion for summary judgment and granted the cross motion by the Superintendent of Insurance as liquidator of Midland for summary judgment on his counterclaim.

Insurance Law § 7427 which allows setoffs provides in pertinent part: "(a) In all cases of mutual debts or mutual credits between the insurer or another person in connection with any action or proceeding under this article, such credits and debts shall be set off and the balance only shall be allowed or paid".

The liquidation court reasoned that "mutual debts" could not arise out of different transactions such as those entered into here. Further, the court found that by virtue of the liquidation, Kemper was responsible to a new party and therefore the debts were not mutual on this ground also. Finally, the court noted that giving Kemper a setoff would be contrary to the express policy of the liquidation giving Kemper a "greater" share of the reinsurance proceeds.

■ The right to offset one's debts against corresponding debts owed a bankrupt was stated as early as 1675 *(Anonymous,* 86 Eng Rep 837 [KB]). While this right of offset would apply even in the absence of an agreement or the specific provision in the New York Insurance Law (§ 7427 [a]) allowing it in liquidation proceedings *(see, Carr v Hamilton,* 129 US 252 [1889]), in New York, section 7427 (a) does allow such setoff as long as "mutual debts or mutual credits" are involved. As Judge Cardozo noted "[t]o be mutual, they must be due to and from the same persons in the same capacity" *(Beecher v Vogt Mfg. Co.,* 227 NY 468, 473). However, this does not require that the debts arise out of the same transaction. In fact, the mutual debts contemplated in the case of setoff are generally those arising from different transactions as opposed to recoupment which arises from the same transaction (4 Collier, Bankruptcy ¶ 553.03 [15th ed]) and which does not require mutuality to be asserted *(id.,* ¶ 553.12).

In a definitive and scholarly article on the precise issue involved here, it is noted: "[T]he New York Insurance Department has stated that it would allow offsets only within the same reinsurance agreement. This position has been honored more in the breach than in practice and is contrary to the definition of mutuality which makes no distinction between contracts. Moreover, the leading courts have determined that offset may be applied to totally unrelated transactions. *Scammon v. Kimball* [92 US 362 (1876)] involved in insolvent insurance company and an attempt by private bankers to offset the insurance company's deposits against insurance proceeds on an unrelated loss. The United States Supreme Court stated: '[S]et-off must be understood as that right which exists between two parties each of whom, *under an independent contract,* owes an ascertained amount to the other to set off their respective debts by way of mutual deduction * * *. (Emphasis added.)' *[Supra,* at 367.] Other cases and commentators are in accord." (Semple and Hall, *The Reinsurer's Liability in the Event of the Insolvency of a Ceding Property and*

*Casualty Insurer*, XXI Tort & Ins LJ 407).

The cases cited by the IAS court in its decision that debts arising out of different transactions are not "mutual" and an offset is not "appropriate" do not support such a conclusion. In *Pink v Title Guar. & Trust Co.* (274 NY 167) the Court of Appeals would not allow offset since the action by the Superintendent of Insurance was brought to disaffirm the fraudulent transfer of mortgages. That case reaffirmed the holding of *New York Tit. & Mtge. Co. v Irving Trust Co.* (268 NY 547, *rearg denied* 268 NY 709) that such offsets are allowable "on contract" *(supra,* 274 NY, at 172-173). In *Pink v American Sur. Co.* (283 NY 290), the moneys owed to the insolvent estate were the result of salvage—proceeds received by defendant insurer for the purpose of reimbursing the reinsured and reinsurer for losses sustained by defendant as a trustee and thus no relation of debtor and creditor arose. Further, the losses insured by defendant under its surety bond which it sought to offset had no connection with the reinsurance contracts and arose subsequent to the appointment of the plaintiff as liquidator. In *Matter of People (Consolidated Indem. & Ins. Co.)* (287 NY 34) once again, the Court of Appeals found that as to a salvage fund the reinsured is a trustee for the reinsurer and no relation of debtor and creditor is thus created which may be offset against other obligations. Similarly, in *Superintendent of Ins. of State of N. Y. v Baker & Hostetler* (668 F Supp 1057, *affd without opn* 826 F2d 1065), the Federal court of the Northern District of Ohio found a law firm could not offset legal fees owed to it against moneys and documents owed to the insurer since these moneys and documents were held "in trust" for the insurer. In *Harnett v National Motorcycle Plan* (59 AD2d 870), this court found no offset applicable where the insurer sought to offset obligations owed the insolvent against its obligations as "trustee". *Matter of Workmen's & Suffolk Mut. Ins. Co.* (71 Misc 2d 614) places claims of the member policyholders of an insolvent mutual casualty company for return of prepaid unearned premiums in parity with claims for fires and other casualty losses and thus did not even involve offset. Finally, in *Matter of Dominion Ins. Co. (affd without opn* 145 AD2d 1004), offset was denied from a trust.

■ The liquidation court also erred when it found that the insolvency clause of the Playtex contract (set forth *supra)* requiring Kemper to pay Midland or the liquidator "without diminution because of such insolvency" resulted in a revision

of Kemper's obligations, altering the capacity in which it was acting as well as making it liable to a new party (the liquidator rather than Midland) and thereby destroying mutuality. However, both the Playtex contract and the treaty had identical insolvency clauses inserted for the same reasons. Since reinsurance agreements are in the nature of indemnity agreements, a reinsurer would ordinarily be liable only in the event and to the extent a claim was actually paid by the insolvent insurer *(Fidelity & Deposit Co. v Pink,* 302 US 224 [1937]). To obviate this result, the insolvency clause is required by State law (Insurance Law § 1308 [a] [2]) if the insurer wishes to take certain financial credits for the reinsurance. Preserving the assets of an insolvent insurer the reinsurer by the terms of such a clause pays the same amount to the liquidator it would have paid to the insurer had it remained solvent. While the reinsurer makes the payment to the liquidator in the case of insolvency, this does not make the debts nonmutual. Both parties were acting in the same capacity at the time the debts were contracted and the debts arose before liquidation *(O'Connor v Insurance Co.,* 522 F Supp 611). Further, acceptance of the contrary holding by the IAS court would render *any* offset in a liquidation proceeding impossible and section 7427, which applies only to preliquidation debts, would have no purpose and could never be invoked.

While the IAS court additionally found that to allow offset would give Kemper a greater share of the reinsurance proceeds "in fundamental opposition to the express policy behind the liquidation statute", this is simply not true. There is nothing express or implied in the insolvency clause or the statute (§ 1308 [a] [2]) to conclude that the insolvency clause, which requires the reinsurer to make payments in the event of the company's insolvency "without diminution to the Company, or its liquidator, receiver or statutory successor" *(supra),* creates a different category of obligation directly to the liquidator rather than the insolvent insurer. This language referring to payment without diminution to "the Company, or its liquidator" simply tracks the language of Insurance Law § 7405 (a) allowing the Superintendent of Insurance to deal with the insolvent insurer's property and business in his own or the insured's name. However, it is black letter law in New York, that the liquidator steps into the shoes of the insolvent insurer assuming all its rights and subject to all the defenses and setoffs the insurer was subject to at the time of the insolvency. *(See, Bohlinger v Zanger,* 306 NY 228, 234.) Conse-

quently, liquidation orders do not magically change the nature of debts and obligations in the ordinary case *(cf., Corcoran v Ardra Ins. Co.,* 156 AD2d 70). What were mutual debts and credits do not become, ipso facto, nonmutual debts and credits. Further, to reiterate, acceptance of this interpretation of the insolvency clause would render all preliquidation debts incapable of offset and render section 7427 meaningless.

Finally, rather than being against the public interest, reinsurer offset is in the interests of policyholders and the general public. "The Liquidator maintains that [the State] uses its insolvency rules to protect policyholders. If so, then [the State] must protect the integrity of reinsurance pools, which spread risk more effectively and so yield great benefits for policyholders. Reinsurance pools * * * are setoff devices from the start. It would hamper the utility of reinsurance pools, and so increase the cost of insurance, if bankruptcy not only carved a pool into pre- and post-filing portions but also broke up the offset for casualties occurring before the filing. Offsetting debts in a reinsurance pool not only spreads risk but also acts as mutual security for performance. Such security is especially important for smaller insurers; if the large firms could not count on the netting of balances to satisfy obligations, they would be more likely to exclude smaller or tottering firms— making new entry harder and precipitating failures of firms in difficulty. With a mutual offset inside the pool, each party's desire to realize on its own claims against the pool gives it an incentive to keep the pool going. * * * If the instant one member fails the other member's exposure becomes the gross rather than the net obligation, then the mutual security of the offsetting debts is destroyed. Pools become less useful; the premium charged to bear risk will rise." *(Stamp v Insurance Co.,* 908 F2d 1375, 1380 [7th Cir 1990].)

Accordingly, the order of the Supreme Court, New York County (Beverly Cohen, J.), entered on or about April 3, 1990, which, *inter alia,* denied the motion by plaintiff Kemper Reinsurance Company for summary judgment pursuant to CPLR 3212 declaring certain set-off rights, and which granted the cross motion by defendant James P. Corcoran as Superintendent of Insurance of the State of New York and liquidator of Midland Insurance Company for summary judgment seeking an adverse declaration that plaintiff had no right to setoff as against the liquidator for certain sums due from Midland Insurance Company, and for a judgment in the sum of $753,147.20 in reinsurance proceeds on the liquidator's coun-

terclaims as against Kemper, is modified, on the law, to grant plaintiff's motion for summary judgment declaring plaintiff has the right of setoff as against the liquidator for certain sums due from Midland Insurance Company and denying defendant's cross motion and otherwise affirmed, without costs or disbursements.

MURPHY, P. J., SULLIVAN, ROSENBERGER and ROSS, JJ., concur.

Order, Supreme Court, New York County, entered on or about April 3, 1990, modified, on the law, to grant plaintiff's motion for summary judgment declaring plaintiff has the right of setoff as against the liquidator for certain sums due from Midland Insurance Company and denying defendant's cross motion for summary judgment, and otherwise affirmed without costs or disbursements.